481 So.2d 263 (1985)
James Bickham CLEMENTS
v.
Mary Kathryn Clements YOUNG.
No. 55153.
Supreme Court of Mississippi.
November 20, 1985.
*265 Stanley F. Stater, III, Canton, for appellant.
William R. Barnett, Barnett & James, Jackson, for appellee.
Before PATTERSON, C.J., and HAWKINS and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
At its core this case tests the limits upon a divorced custodial parent's prerogative to incur substantial expenses for orthodontics care for children and require the supporting non-custodial parent to pay the bill. Absent an agreement to the contrary, sound practical considerations mandate that substantial discretion in such matters be vested in the custodial parent, albeit not unfettered discretion. Here the agreement of the parties, incorporated into the divorce decree, required the father to pay the medical and dental expenses of the children, so long as the care and treatment be reasonably necessary and its cost reasonable in amount. We hold here that the mother has not abused her discretion as the custodial parent to select the orthodontist to care for the children and enforce the prior decree according to its tenor.

II.

A.
James Bickham (Jimmy) Clements and Mary Kathryn Clements (Young) were married in Holmes County, Mississippi, on May 23, 1966. They have two children, Jeremy Branch Clements, born September 17, 1969, and Susan Shea Clements, born September 29, 1972. Jimmy and Mary Kathryn finally separated in December of 1974. On March 14, 1975, in anticipation of obtaining a divorce, they executed a formal written Separation and Property Settlement Agreement. Thereafter, on March 17, 1975, the Chancery Court of the First Judicial District of Hinds County, Mississippi, entered a final decree of divorce terminating the marriage. The divorce was granted on grounds of habitual cruel and inhuman treatment of Mary Kathryn by Jimmy. Miss. Code Ann. § 93-5-1 [Seventh] (1972). The divorce decree expressly provided that the Separation Agreement should be incorporated therein. Pursuant thereto, custody of the children was vested in Mary Kathryn.
*266 Each of the children suffers a congenital dental condition known as malocclusion of the teeth or "overbite". These conditions were inherited from the children's father and were known to the parties prior to the divorce. In this state of affairs the parties included in the separation agreement, subsequently court approved, a provision requiring that Jimmy Clements "pay all reasonable and necessary medical and dental expenses of the minor children".
In due course thereafter, each party entered a second marriage. Mary Kathryn has become Mrs. Richard Young.
Two and a half years later the parties were back in court, as Mary Kathryn moved to cite Jimmy for contempt and Jimmy moved the court for an order modifying various provision of the prior decree. On September 12, 1978, the Chancery Court entered its decree denying so much of Jimmy's motion as sought to award him custody but granting his motion to the extent of reducing his child support obligation from $465.00 per month to $350.00 per month, effective September 1, 1978. The Chancery Court refused to cite Jimmy for contempt. The effect of the October 12, 1978 decree was to leave the permanent care, custody and control of the children vested in Mary Kathryn with reasonable visitation rights being reserved to Jimmy.
Round Three between Jimmy and Mary Kathryn was commenced on October 14, 1982. On that date Mary Kathryn filed a motion asking that Jimmy be held in contempt of court for his failure and refusal to pay medical, dental and drug bills she had incurred on behalf of the children. The matter came on for hearing in open court on July 12, 1983, at the conclusion of which the trial judge ruled in substance in favor of Mary Kathryn. By judgment entered on July 21, 1983, the Chancery Court held that Jimmy was in arrears in his medical, dental and drug expense obligations and ordered payment to Mary Kathryn of the sum of $5,633.28 plus costs. This judgment included a $250.00 attorneys fee awarded to Mary Kathryn plus her $30.00 advance for court costs. In addition, the judgment of July 21, 1983, found Jimmy in contempt of court and committed him to the custody of the Sheriff of Hinds County for confinement until he purge himself of his contempt by payment of the aforesaid sum of $5,633.28.
Immediately thereafter Jimmy perfected the present appeal in connection with which the Chancery Court stayed the effect of the judgment rendered by allowing this appeal with supersedeas. The matter is now ripe for our review.

B.
Jeremy Branch Clements and Susan Shea Clements have suffered from malocclusion of the teeth or the inability of the bite of the teeth to meet as it is supposed to meet. This "overbite" or "rabbit teeth" has apparently been inherited from the children's father. This condition has caused Susan to have a severe frontal lisp, a deviant speech pattern, further complicated by tongue thrusting, and a deviant swallow. Susan has been treated by a speech pathologist contemporaneously with orthodontic dental care by Dr. Robert B. Parkes of Jackson, Mississippi. Jeremy has been treated with orthodontic dental care by Dr. Parkes. This treatment appears to have been successful.
Mary Kathryn selected Dr. Parkes to perform the orthodontic dental services for the two children for a variety of personal reasons: Dr. Parkes had treated Mary Kathryn when she was a teenager and had treated other members of her family. She regarded him as a very good orthodontist and has complete faith in him.
Jimmy Clements does not deny that the children were in need of orthodontic dental care. His sole complaint seems to be that Dr. Parkes charges too much. Jimmy offered evidence that during a brief period of time when Jeremy was living with him, Jeremy was treated by Dr. Alex C. Shotts, Jr., another orthodontist practicing in Jackson. It appears that, prior to the performance of much of the orthodontics work at issue, Jimmy and Mary Kathryn discussed the matter. Jimmy well knew Mary Kathryn *267 planned to send the children to Dr. Parkes and he objected. Jimmy countered that he would pay all orthodontic expenses, provided Mary Kathryn would send the children to Dr. Shotts. Jimmy's primary reason for preferring Dr. Shotts was his view that the children could have received the same orthodontic care from Dr. Shotts and for a lot less money. Mary Kathryn's position throughout has been that, under the separation agreement/divorce decree, she has substantial discretion to select the orthodontist to provide the care the children need, notwithstanding any objection Jimmy may interpose. The trial judge accepted this view.

III.
Our law necessarily provides that the award of custody to a parent incident to a separation or divorce vests in the custodial parent the right to make, and responsibility for making, day to day decisions regarding the care and welfare of the children. Except as otherwise agreed by the parties in writing, the custodial parent may determine the child's upbringing, including his education and health and dental care. Such discretion is inherent in custody. It is vested in the custodial spouse though not spelled out in detail in a separation agreement or custody decree.
This authority, however, is not unlimited. The custodial parent's actions, particularly in the context of matters the expense for which is to be assessed against the noncustodial parent, are always subject to challenge on grounds of unreasonableness. Put another way, and having reference to the issue posed in this case, a divorce award of custody to the mother and assessment of medical and dental expenses to the father do not give the mother carte blanche authority to provide wholly elective or marginally necessary care for the children and then require the father to pay great or exorbitant expenses which would have been well beyond the reasonable means of the parties had they remained married.
In this case Jimmy Clements has heretofore been directed to "pay all reasonable and necessary medical and dental expenses of the minor children". Without serious question, the orthodontic care and treatment received by these two children falls within the meaning of the phrase "dental expenses". The March 17, 1975 decree, however, does not command that Jimmy Clements pay all dental expenses, only "reasonable and necessary" dental expenses.
In Smith v. Smith, 405 So.2d 896, 898 (Miss. 1981), we faced an aspect of this problem and held that reasonable and necessary orthodontic care is that which
was reasonably necessary for ... [the child's] health and well-being, including mental and physical, and is the proper treatment.
405 So.2d at 898.
Whether the orthodontic treatment a child receives and the expenses incurred in connection therewith are "reasonable and necessary" ordinarily presents questions of ultimate fact which must be determined before the cost is assessed to a divorced parent other than the one ordering the care. Smith v. Smith, 405 So.2d 896, 898 (Miss. 1981).

IV.
Our context set, we turn to Jimmy Clements' specific assignments of error. First, he complains of the admission of Exhibits P-1 through P-5. These exhibits are bills and prescription receipts evidencing charges made for medical and dental (orthodontic) treatment furnished to the two children, totaling over $5,000.00. Neither Dr. Parkes nor anyone else was called to testify in explanation of any of these bills. Jimmy claims he has thus been deprived of his right of cross-examination.
For more than ten years the rule has been accepted in this state that:
Proof that medical, hospital and doctor bills were paid or incurred because of any illness, disease or injury shall be prima facie evidence that such bills so *268 paid or incurred were reasonable and necessary.
This rule has been codified as Miss. Code Ann. § 41-9-119 (1972). See Jackson v. Brumfield, 458 So.2d 736, 737 (Miss. 1984); McCay v. Jones, 354 So.2d 1095, 1100-01 (Miss. 1978).
We consider "medical ... bills" to include bills for dental and orthodontics care and treatment. So construed this rule would seem to thwart Jimmy Clements' objections. Instead, we are presented a linguistic argument to the effect that the rule applies only in the case of "illness, disease, or injury". We are told that the malocclusion of the bite of these two children is a mere "condition", not an "illness, disease or injury". Only a lawyer would come up with such an argument. We hold that any medical or dental condition, present at birth or thereafter caused, is an "illness, disease or injury" within the meaning of this rule.[1]
The record reflects without contradiction that these bills had been "paid or incurred". Subject to what we say below regarding pre-September 12, 1978 bills, these exhibits provide Mary Kathryn with a prima facie showing that the medical and dental expenses they represent were reasonable in amount and were necessarily incurred. The assignment of error is denied.

V.

A.
At the conclusion of Mary Kathryn's evidence, Jimmy Clements moved the court to exclude the evidence and dismiss the motion for contempt. In effect, Clements sought an involuntary dismissal in accordance with Rule 41(b), Miss.R.Civ.P. Davis v. Clement, 468 So.2d 58, 61-62 (Miss. 1985).
In a technical sense, Clements waived his right to complain of the trial court's denial of his Rule 41(b) motion to dismiss made at the end of movant's case by going forward with proof of his own. In both jury and non-jury cases, civil and criminal, we have repeatedly held that, where a defending or responding party, following the overruling of a motion for a directed verdict or a motion to dismiss, goes forward with evidence of his own, he waives the right to assign on appeal error in the failure of the trial judge to grant his motion. See, e.g., Ellis v. State, 469 So.2d 1256, 1260 (Miss. 1985); Shavers v. State, 455 So.2d 1299, 1302 (Miss. 1984); Engineering Service Co., Inc. v. Minor, 346 So.2d 916, 918 (Miss. 1977); Illinois Central Railroad Co. v. Perkins, 223 Miss. 891, 915-16, 79 So.2d 459 (1955).
Because it is often misunderstood, this point requires comment. By offering evidence of his own, the defending party in no way waives the right to challenge the sufficiency or weight of the evidence in the event of an adverse judgment. What the waiver rule means is he must proceed on the basis of the evidence before the court at the time the challenge is made and not in the limited state in which it may have been back when the motion to dismiss was made.
Put otherwise, all of these motions  the motion to dismiss, the motion in a jury trial for a directed verdict made at the end of the plaintiff's or movant's case, as well as the request for a peremptory instruction at the end of all of the evidence or a motion for judgment notwithstanding the verdict thereafter, are procedural vehicles for challenging the sufficiency of the plaintiff's or movant's case. Each requires that the court consider all of the evidence before it at the time the motion is offered. The waiver rule here at issue does not mean that Clements has waived his right to challenge the weight or sufficiency of the evidence to sustain the judgment against him. He has merely lost the procedural right to *269 make that challenge by restricting this Court's view only to that evidence offered by Mary Kathryn as a part of her case in chief. We will consider the sufficiency of the evidence point, but we will consider it on the basis of all of the evidence offered.

B.
Mary Kathryn's case in chief established without contradiction that the two children were suffering from malocclusion of the teeth or the inability of the bite of the teeth to meet as is the case with normal teeth. This condition of "overbite" or "rabbit teeth" was apparently inherited by the children. The children were treated with orthodontic dental care by Dr. Robert Parkes.
The statements of charges of Dr. Parkes were sufficient to establish, prima facie, the reasonableness and necessity of the treatment or other services for which the charges have been made and also the necessity for incurring the charges and the reasonableness of their amount. Miss. Code Ann. § 41-9-119 (1972). This prima facie showing, of course, is subject to attack by any other party to the action. Jackson v. Brumfield, 458 So.2d 736, 737 (Miss. 1984); McCay v. Jones, 354 So.2d 1095, 1100-01 (Miss. 1978). Though attacked it remains "substantial evidence" which may be considered by the trier of the facts come decision time.
Julie Helfrich, a speech pathologist with the Jackson Public Schools, and the treating speech pathologist for the parties' daughter, testified that Susan Clements had a speech handicap in that she had a voiceless t____h which is a the sound for all the s, z and s blends. She had a severe frontal lisp, a deviant speech pattern, complicated by tongue thrusting, a deviant swallow. These speech problems were caused by the child's compensation for her malocclusion. The speech pathologist advised orthodontic care in addition to speech therapy. She testified further that the orthodontic care contributed greatly to the resolution of Susan's speech problems, and, in fact, recommended strongly to her other patients with similar problems that their orthodontists consider using the innovative technique used by Dr. Parkes in treating Susan.
Mrs. Helfrich further testified that, in her opinion, a child with a speech problem loses his self-concept and self-esteem and it places a strain on him academically, emotionally and socially. She further testified that in Susan's case, it was imperative that speech therapy and orthodontic care be given her as necessary for her general well-being. She also testified that such treatment would be necessary for her mental well-being.
Mrs. Helfrich also examined a teeth mold, previously identified and introduced as a mold of the teeth of Jeremy Clements prior to orthodontic treatment. She testified that the mold of Jeremy Clements showed a slightly worse case of malocclusion than the corresponding mold of Susan's teeth. She stated that Jeremy's teeth had the same malocclusion present in Susan's teeth and, based on an examination of the mold of Jeremy's teeth, gave her opinion that Jeremy's well-being would benefit from orthodontic care.
We acknowledge in candor that the trial judge has made no finding on the issues of reasonableness and necessity of both the treatment and the expense thereof in the case of each child. Smith v. Smith, 405 So.2d 896, 898 (Miss. 1981) makes it apparent that this should have been done. We hold nevertheless that this is one of those cases where we should proceed on the assumption that the trial judge resolved these issues in favor of Mary Kathryn. See Allgood v. Bradford, 473 So.2d 402, 411 (Miss. 1985); Bryant v. Cameron, 473 So.2d 174, 179 (Miss. 1985); In Re Enlargement of Boundaries of Yazoo City, 452 So.2d 837, 842 (Miss. 1984); Harris v. Bailey Avenue Park, 202 Miss. 776, 791, 32 So.2d 689, 694 (Miss. 1947).
To these assumed findings of the trial judge, we must apply the familiar substantial evidence/manifest error standards. Cotton v. McConnell, 435 So. 683, 685 (Miss. 1983); Culbreath v. Johnson, *270 427 So.2d 705, 707-09 (Miss. 1983); see also Anderson v. City of Bessemer City, N.C., 470 U.S. ___, 105 S.Ct. 1504, 84 L.Ed.2d 518, 528-29 (1985). When this is done, it becomes quickly apparent that we have no authority but to affirm.

C.
One of Jimmy Clements' complaints below and here has been that some of the expenses Mary Kathryn seeks to have assessed to him were incurred before the prior contempt/modification proceeding which culminated in a decree on September 12, 1978. That decree reduced Clements' monthly child support obligation from $465.00 to $350.00, and made other provisions. The matter of medical or dental bills, however, appears not to have been mentioned.
If there was a problem about medical or dental bills prior to September, 1978, the matter could and should have been litigated then. The decree of September 12, 1978, is res judicata with respect to all claims that were presented or may reasonable have been presented at that time. See Dunaway v. W.H. Hopper & Associates, Inc., 422 So.2d 749, 751 (Miss. 1982); Golden v. Golden, 246 Miss. 562, 568, 151 So.2d 598, 600 (1963). Jimmy Clements is liable here only for those bills which have accrued since September 12, 1978.
In this view we find that the monetary judgment from which the present appeal has been taken must be reduced. Our review of the record reveals, without contradiction, that on July 21, 1983, Jimmy was obligated to Mary Kathryn in the sum of $4592.78, computed as follows:

Children's Medical Group charges incurred after September 12, 1978,
which date is date of modification of original divorce decree 183.00
Ex. P-2 reflects charges incurred after modification. 164.00
Prescription drugs purchased 4-4-82 by Mrs. Clements 13.78
Bill for first phase of Jeremy's orthodontic care, starting in 1979 2275.00
Jeremy's second phase starting Feb., 1982 reflecting total chgs. of
$2375.00 less $980.00 either paid by Mr. Clements or owed to
orthodontist. 1395.00
Parties agreed to split cost of Susan's treatment and Chancellor
recognized this agreement. Mr. Clements, is only liable for half
of $2375.00 of first phase of treatment.
 Total Cost 2375.00
 Less Joint Payment -1250.00
 ________
 1125.00
Appellee has paid the balance but as per agreement
Appellant is only liable for half. 562.00
 _______
Total medical, dental and drug expenses owed 4592.78
Attorneys Fees 250.00
Court Costs Advanced 30.00
 ______
 Total 280.00 280.00
 ________
 TOTAL $4872.78

The judgment below will be modified in conformity with these computations. With this sole exception, the monetary feature of the judgment will be affirmed.

VI.
Jimmy Clements also charges error in so much of the judgment below as holds him in contempt of court for failure to comply *271 with the dental expense obligations imposed upon him in the March 17, 1975 decree.
On March 14, 1975, the parties made and entered into a separation agreement which provided that Jimmy Clements was to "pay all reasonable and necessary medical and dental expenses of the minor children... ." The terms and provisions of this separation agreement were incorporated into the final decree of divorce. At that point the requirement that Jimmy pay medical and dental expenses for the children became incorporated into the decree the same as though a chancellor had ordered such after a contested divorce trial. Marascalco v. Marascalco, 445 So.2d 1380, 1381-82 (Miss. 1984); Tedford v. Dempsey, 437 So.2d 410, 417 (Miss. 1983); Taylor v. Taylor, 392 So.2d 1145, 1147-49 (Miss. 1981). Such an obligation is enforceable via the extreme remedy of contempt upon the same showing as is required in the case of a similar obligation in any other custody or support decree. Switzer v. Switzer, 460 So.2d 843, 846-47 (Miss. 1984).
Movant Mary Kathryn Clements' showing on the contempt feature of the proceedings below consisted of the following:
(a) Establishment that there was outstanding the decree of March 17, 1975, imposing upon Jimmy Clements the obligation to pay all reasonable and necessary medical and dental expenses.
(b) Exhibits tendered and admitted into evidence showing medical, dental and drug expenses incurred and/or paid totaling $5,353.28 (As explained above, this amount should have been only $4592.78); and
(c) Evidence to the effect that Jimmy Clements had not paid the above sum.
Our law is settled that such a showing makes out a prima facie case of contempt. Collins v. Collins, 171 Miss. 891, 895, 158 So. 914, 915 (1934); Hand, Mississippi Divorce, Alimony and Child Custody, § 14-3, p. 215 (1981).
In such a posture, the defendant may avoid a judgment of contempt by establishing that he is without present ability to discharge his obligation. Ramsay v. Ramsay, 125 Miss. 185, 87 So. 491, 493 (1921). The defendant has the burden of proving his inability to pay. Redding v. Redding, 167 Miss. 780, 150 So. 776 (1933). Such a showing must be made with particularity and not in general terms. Hooker v. Hooker, 205 So.2d 276, 278 (Miss. 1967).
Jimmy Clements' showing is wholly inadequate. In his written response to the motion for contempt, which he filed October 28, 1982, Clements in no way asserted that he lacked the present ability to pay medical and dental expenses of the children. At trial he offered no proof that he lacked the present financial ability to pay. At oral argument, Clements' counsel conceded that his client has the ability to pay the sum in issue. In sum, the trial judge's adjudication of contempt was well within the law and the evidence and is wholly beyond our authority to disturb. Rhodes v. Rhodes, 420 So.2d 759, 760 (Miss. 1982).

VII.
Mary Kathryn has moved for an award of attorneys' fees incident to this appeal. Consistent with our established practice in such matters, we direct Jimmy Clements to pay to Mary Kathryn the sum of $125.00, this sum being one-half the attorneys' fees award made in the trial court. All taxable costs incident to this appeal shall be assessed against Jimmy Clements.
AFFIRMED AS MODIFIED; MOTION FOR ATTORNEYS FEES SUSTAINED
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] We note that Webster's Third New International Dictionary (1971) defines "illness" as

an unhealthy condition of the body or mind; (at p. 1127) (Emphasis added)
"Disease" has been defined to include
inherent defects of the organism (as various genetic anomalies). (at p. 648)