540 So.2d 9 (1989)
Ray Wilson SHEARER
v.
Patsy Sue SHEARER.
No. 58346.
Supreme Court of Mississippi.
February 22, 1989.
Terrell Stubbs, Mendenhall, for appellant.
Mike Pace, Mendenhall, for appellee.
*10 Before DAN M. LEE, P.J., and ROBERTSON and ZUCCARO, JJ.
ROBERTSON, Justice, for the Court:

I.
This is an appeal from a Chancery Court order first reducing to judgment a substantial arrearage in alimony payments and, then, reducing, but not eliminating, the ex-husband's permanent alimony obligation. All of this follows by some two years a prior agreed order setting total arrearages in the ex-husband's obligations at that time at $32,000.00.
The case has potential for making scientific history, for the ex-wife's substantive success would be the first time to our knowledge anyone has extracted blood from a turnip. We consider the ex-husband's appeal by more mundane legal principles which decree that we grant him but modest relief.

II.
Ray Wilson Shearer, Jr. (Ray) and Patsy Sue Shearer (Sue) were married on June 2, 1961, in Jones County. Pursuant to the provisions of a final judgment entered August 6, 1982, in the Chancery Court of Simpson County, Mississippi, the parties were granted a divorce on grounds of irreconcilable differences. Miss. Code Ann. § 93-5-2 (Supp. 1988).
Under the provisions of a "Child Custody and Property Settlement Agreement", which the Chancery Court incorporated into its final judgment, Sue was granted custody of the only child of the marriage unemancipated at the time. In addition, the settlement agreement specified that Ray was to pay the following items: $500.00 per month as child support; all medical expenses of the child; $1,100.00 per month alimony; all of Sue's medical and hospitalization insurance and costs; the mortgage on their home; and the premiums of a life insurance policy naming Sue as beneficiary.
Ray earns his livelihood as an independent contractor and drilling consultant in the oil industry. Due to the recession in that industry, Ray's income has dropped precipitously  from a high net income of $72,619.00 in 1982 dropping to $14,648.00 in 1985 and to a low of $12,695.00 in 1986; hence, Ray's resemblance of a financial turnip. Ray has been unable to fulfill his obligations under the 1982 settlement agreement. Sue has filed numerous motions for citations of contempt against Ray.
On February 25, 1985, the parties entered into an agreed order setting the total arrearages in alimony and child support at $32,000.00 and reducing it to judgment. In that agreed order, Ray promised to pay $2,000.00 to Sue immediately and $1,000.00 every month up to and including September, 1985.
Ray paid the $2,000.00 and paid $1,000.00 per month pursuant to the order, missing only the July and September payments. During this time, however, further alimony payments came due and went unpaid. On July 11, 1985, after the marriage of his daughter, Ray petitioned the Court to modify the final judgment of divorce regarding his future obligations. On July 15, 1985, the Court issued an order granting the modification and setting the alimony at $1,500.00 per month beginning with the July payment.
The next skirmish between the parties, and the subject of this appeal, occurred one year later. On July 21, 1986, Sue moved that Ray be cited for contempt for his failure to pay the modified alimony. Ray responded with another motion to modify the final judgment of divorce, asking the Court to terminate his alimony obligation on the ground that Sue was self-sufficient.
The case was set for a hearing on February 23, 1987, in the Simpson County Chancery Court. At the hearing Sue sought to establish that the alimony falling due after the entry of the February 25, 1985, order amounted to $41,940.00. ("These figures start March, 1985, and come through today.") The parties agreed that the disposition of the motion for contempt before the Court would not disturb the February, 1985, order reducing to judgment arrearages amounting to $32,000.00. At the conclusion of the hearing the Court ruled on the two motions before it. As to the Motion *11 for Citation for Contempt, the Court determined that Ray was not in contempt because of his demonstrated inability to pay. The Court did, however, enter judgment in the sum of $38,940.00. Presumably, the Court accepted at face value the figures proffered by Sue ($41,940.00) and gave Ray credit for the $3,000.00 he had proven to have been paid.

III.
On this appeal Ray challenges the sufficiency of the evidence presented by his ex-wife to support the Chancery Court's judgment against him in the amount of $38,940.00. Ray concedes that the Chancery Court was authorized to award Sue the past-due alimony payments of $1,100.00 per month from March through June of 1985 and $1,500.00 per month from July, 1985, forward. He contests, however, the Court's authority to render judgment against him on the variable amounts not proven by his ex-wife.
The findings made by a Chancery Court sitting as a finder of fact are reviewed under the substantial evidence/manifest error standard. Clements v. Young, 481 So.2d 263, 269 (Miss. 1985); Cotton v. McConnell, 435 So.2d 683, 685 (Miss. 1983); Culbreath v. Johnson, 427 So.2d 705, 707-08 (Miss. 1983). Where the court has not made specific findings of fact, this Court proceeds on the assumption that the trial judge resolved all issues in favor of the prevailing party. Allgood v. Bradford, 473 So.2d 402, 411 (Miss. 1985). This standard is applicable to the review of an amount fixed by a chancery court regarding arrearages in child support and alimony. Clements, 481 So.2d at 269-71; Mullen v. Mullen, 246 So.2d 923, 925 (Miss. 1971).
Where the husband is obligated to pay certain expenses which may vary from month to month, common sense dictates that proof of these expenses be made by the obligee. See Brown v. Gillespie, 465 So.2d 1046, 1047 (Miss. 1985). Such sums must be shown with reasonable certainty and not left to speculation or conjecture. Cf. Leard v. Breland, 514 So.2d 778, 784 (Miss. 1987); Lovett v. E.L. Garner, Inc., 511 So.2d 1346, 1353 (Miss. 1987). In the case of Clements v. Young, 481 So.2d 263 (Miss. 1985), the ex-husband/obligor was held in contempt for his failure to pay the orthodontic expenses of his noncustodial child. The Chancery Court ordered payment of the sum of $5,633.28. 481 So.2d at 266. On appeal, this Court modified the judgment, based upon the facts in the record, to the sum of $4,592.78. 481 So.2d at 270. Manifest errors in calculation are subject to modification by this Court.
Ray challenges the itemization proffered by his ex-wife relating to amounts due in the period from March to June, 1985. The amount of alimony for this period of time was computed under the original divorce decree, which provided for $1,100.00 in alimony and $500.00 in child support plus certain expenses. The itemization, entered into evidence by Sue, fixed this amount at $3,860.00 for March. Owing to the emancipation of the only child of the marriage, the itemization reflects an amount due in the sum of $3,360.00 for the months of April, May and June.
When questioned on the origin of her claimed monthly arrearage, Sue stated that the amount included $2,000.00 in alimony, utility bills and groceries. The Court later noted that the first element was incorrect (alimony was fixed at $1,100.00 in the settlement agreement) and that the latter two elements were not obligations assumed by Ray in the agreement. Despite the inclusion of these erroneous elements in the itemization, the Court accepted the bottom-line figure of the itemization in its order and rendition of judgment.
Second, the itemization of arrearage, introduced into evidence by Sue, includes $1,000.00 per month for the months of March through September, 1985. This amount was due pursuant to a previous court order dated February 1985 where the court rendered judgment on previous arrearages amounting to $32,000.00 and ordered Ray to pay $1,000.00 per month through September, 1985. Ray contests the inclusion of these payments in the second court order as allowing Sue a double-recovery. *12 In its second order, dated February, 1987, the Court specifically held that the judgment rendered "will not affect the judgment that has heretofore been entered by this Court for the other arrearage that he was in arrears and where the prior order has been ordered for approximately $32,000.00." By leaving the previous order unaffected, the Court did in fact render judgment twice for $7,000.00 in arrearage. That is, $7,000.00 owing on the February, 1985, order (left unaffected by the second order) was included in the February, 1987, order.
In sum, we modify Ray's alimony arrearage obligation as follows: First, the sum of $7,000.00 must be deducted therefrom, leaving a balance of $31,940.00. Second, the maximum amount Ray may be held to have owed  and not paid  for the period from March 1985, the date Ray's arrearages were last reduced to judgment, until July 1985, the date on which his total alimony obligation was fixed at $1500.00 per month, shall be $1100.00 per month or a total of $5,500.00. Sue's proof of any additional sums owing under the prior decree is too speculative to credit. Inasmuch as it appears that the Chancery Court allowed Sue the sum of $2,360.00 for each of these four months, the amount of the judgment in Sue's favor and against Ray must be reduced by an additional $5,040.00 ($1,260.00 times 4 months = $5,040.00). This yields a net figure of $26,900.00.

IV.
Ray maintains that the modification order by the Court reducing his alimony obligation from $1,500.00 to $500.00 per month should have been made effective as of the date of his petition for modification  October 3, 1986  instead of the date of the order  March, 1987.
On this latter point, the Court certainly had authority to make the modification effective the date of the petition. McHann v. McHann, 383 So.2d 823, 826 (Miss. 1980). That authority was discretionary and we perceive no basis for a conclusion that the Chancery Court abused its discretion.

V.
Ray contends that he is in such poor financial condition that the alimony obligation fixed by the Chancery Court ($500.00 per month) is unduly burdensome and would not allow him to lead a normal life. He argues on this appeal that the Court erred in not terminating his alimony obligations altogether.
Determination of the amount of alimony due to a divorced spouse has long been considered to be beyond the authority of this Court to disturb, absent a gross miscarriage of justice.
This Court has repeatedly stated that the manner and amount of alimony awards are peculiarly and primarily matters for decision by the trial court. E.g., Aldridge v. Aldridge, 200 Miss. 874, 27 So.2d 884 (1946). In the case of Jenkins v. Jenkins, 278 So.2d 446 (Miss. 1973), we stated:
As long ago as 1856 in the divorce case of Armstrong v. Armstrong, 32 Miss. 279, we stated with regard to support for the wife:
There appears to be no fixed rule upon this subject, but it depends upon the discretion of the court, to be exercised with reference to an equitable view of all the circumstances of the particular case, the only general rule being, that the wife is entitled to a support corresponding to her rank and condition in life, and the estate of her husband. These principles are recognized by our statute, which provides, that the court may make such allowance "as from the circumstances of the parties and the nature of the case may be fit, equitable, and just... ." (32 Miss. at 290)
278 So.2d at 449-50.
McKee v. McKee, 418 So.2d 764, 766 (Miss. 1982).
As noted above, we have no doubt Ray will not retire the vested arrearage in his alimony obligations for a long, long time, if ever. His month to month obligations for alimony, however, are another matter. In the instant case, the Chancery Court's determination *13 of the amount of continuing alimony obligations and fixing this amount at $500.00 per month was within the Court's sound discretion. The assignment of error is denied.
AFFIRMED AS MODIFIED
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, PITTMAN and ZUCCARO, JJ., concur.