955 So.2d 903 (2007)
Dennis Neal WILKERSON, Appellant/Cross Appellee
v.
Kathy Ray Youngblood WILKERSON, Appellee/Cross Appellant.
No. 2005-CA-01382-COA.
Court of Appeals of Mississippi.
January 9, 2007.
Rehearing Denied May 8, 2007.
*905 John C. Jopling, J. Randolph Lipscomb, Columbus, attorneys for appellant.
John W. Crowell, Columbus, Kristen E. Wood, attorneys for appellee.
EN BANC.
GRIFFIS, J., for the Court.
¶ 1. Dennis Neal Wilkerson ("Dennis") filed a petition for clarification of his child support obligations. Kathy Ray Youngblood Wilkerson ("Kathy") responded and filed a counter-petition for clarification of the property distribution. The chancellor entered a judgment that considered both petitions and clarified the earlier judgment. On appeal, Dennis argues that the chancellor: (1) exceeded his jurisdictional authority, (2) contravened well-established principles of equity, (3) did not follow the law of equitable distribution, and (4) entered a judgment that "exceeds the findings of the lower court." On cross-appeal, Kathy argues that the chancellor erred when he found that the children's expenses incurred for counseling and dental braces were not necessary medical expenses. We affirm on direct appeal and affirm in part and reverse and render in part on cross appeal.

*906 FACTS
¶ 2. On August 25, 1995, Kathy was granted a divorce from Dennis. According to the judgment, Kathy was awarded physical custody of Neal and Seth. Dennis was ordered to pay child support and was awarded visitation. The chancellor found that the marital home and Dennis's business, Wilkerson, Inc., were marital property. The chancellor awarded Kathy the marital home, and ordered Dennis to pay a share of the mortgage. In exchange, the chancellor awarded Dennis the business, free and clear of Kathy's interest.
¶ 3. On June 21, 2004, the chancellor found Dennis in contempt for failing to provide medical insurance for Neal and Seth. The chancellor increased Dennis's child support payments and ordered Dennis to pay for all his sons' medical expenses that were not covered by health insurance. The chancellor denied Dennis's request for a change of custody.
¶ 4. A few months later, Dennis filed a motion to clarify whether he was obligated to pay for his sons' counseling and Neal's dental braces. Kathy filed a counterclaim to determine whether Dennis had fulfilled his obligations to pay a portion of the mortgage payments on the former marital home. Dennis insisted that his financial obligation on the house would cease in March of 2005, when his monthly payments of $304.47 would total $35,000.
¶ 5. On June 14, 2005, the chancellor found that the children's counseling expenses and Neal's braces were not medically necessary; therefore, Dennis did not have to pay for them. The chancellor found that Dennis's mortgage obligation was $300, not $304.47, per month. The chancellor further ruled that Dennis's obligation to pay $300 a month would cease in August of 2018, when his total payments equaled $82,800. Since he only paid $290.42 in March 2005, he was held in arrears $9.58. The chancellor further ruled that this arrearage would be offset by the $4.95[1] overpayments Dennis had made between the date of divorce and February of 2005.

STANDARD OF REVIEW
¶ 6. A chancellor's findings of fact will not be disturbed unless manifestly wrong or clearly erroneous. Sanderson v. Sanderson, 824 So.2d 623, 625(¶ 8) (Miss.2002). This Court will not disturb the findings of a chancellor when supported by substantial credible evidence unless the chancellor abused his or her discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Id. at 625-26(¶ 8). Legal questions are reviewed de novo. Russell v. Performance Toyota, Inc., 826 So.2d 719, 721(¶ 5) (Miss.2002).

ANALYSIS
I. Did the chancellor misinterpret his prior order on property division?
¶ 7. Although Dennis styles his appeal as four different issues, his argument under each issue is that the chancellor misinterpreted the 1995 judgment regarding Dennis's mortgage payments and, in the alternative, that the property division was against the law. Specifically, Dennis argues that the original judgment ordered him to pay a total of $35,000, over time, without interest. Kathy countered that the chancellor properly interpreted his prior decreethat Dennis was responsible for $35,000 in principal, plus interest.
*907 ¶ 8. The 1995 opinion of the chancellor determined that the marital home was worth $95,000, and it carried an $81,000 mortgage. The chancellor further found the monthly mortgage payment to be $600. As for Wilkerson, Inc., based on the varied evidence of value that Dennis presented, the chancellor found the value ranged between $50,000 and $85,362. The opinion provided:
The Court finds that it may best accomplish equity under these circumstances by awarding the mother the title to the marital home . . . and requiring the father to make one half of the $600 per month mortgage payment, until a date certain, known as Jubilee, and calculated based upon the following formula, to-wit: Using the total number of remaining mortgage payments from September 1, 1995 until maturity of the mortgage, as the baseline, which equals 100%; the Defendant[']s obligation to pay one half of the monthly mortgage payment shall terminate when the remaining number of monthly payments due and payable equals 14% of the baseline. If the mortgage is paid in advance of Jubilee, the father will be indebted to the mother for the remaining payments as they would have otherwise accrued. This results in the father paying a portion of his one half of his existing debt under the mortgage and increasing the equity value of the mother's ownership of the home in an amount fairly representative of her equity in the tobacco business. Upon the father's payment of his required portion of the mortgage, the mother will have received from the father, value in the sum of $42,000.00 based upon current values ($7,000.00 equity and $35,000.00 principal on the mortgage). The father will be allowed to pay this value to the mother during the life of the mortgage at $300.00 per month from his earnings at Wilkerson, Inc., and the father will receive Wilkerson, Inc. free and clear of any interest of the mother. The full current value of Wilkerson, Inc. is released to the father free of any claim of the mother, and this represents a value to the father of up to one half the value of the stock. Depending upon which of the father's valuations of the stock is used, the value to him of this release would vary from $30,000.00 to $42,000.00.
(emphasis added). This opinion was based on the evidence presented at the original divorce trial that the monthly mortgage payments were only $600 a month. The chancellor assumed the mortgage was a regular thirty-year, amortized loan.
¶ 9. Kathy's petition to clarify asked the chancellor to clarify the date of "Jubilee,"[2] and therefore whether Dennis had satisfied his mortgage obligations. At the hearing, additional evidence on the mortgage was offered. In the June 14, 2005 judgment, the chancellor explained Dennis's mortgage obligations:
In its judgment of divorce entered in August 1995, [Dennis] was ordered to pay [Kathy] $300.00 per month beginning in September 1995 until the Jubilee payment. The calculation of Jubilee was meant to be a date certain based upon a formula created by the Court. The formula was based upon the remaining payments on the mortgage balance of $81,000.00 at $600.00 per month without balloon. The Court was not provided the interest rate or the number of payments or it would have stated them and calculated the Jubilee date. The Court assumed it was a straight amortization but apparently was not provided with *908 the beginning principal of the debt or the original number of payments, whether 240 or 360, etc. On a thirty-year mortgage there would have been 340 payments remaining and that would establish the baseline. Jubilee was set at the payment that left only 14% of the payments remaining.
Footnote 1  The 14% applied to the baseline (the total number payments to amortize $81,000.00 at $600.00 per month) is the approximation of the remaining payments that are to be made by [Kathy] solely. The 14% number is the ratio of $11,000.00 to $81,000.00 rounded to the nearest percent. The actual balance on the debt was approximately $84,000.00 not $81,000.00. The formula includes interest in excess of interest on an amortization of $35,000.00.
The formula was based upon the following specific findings: The balance on an existing mortgage was $81,000.00 and the monthly mortgage payments were $600.00. The value of the marital home was $95,000.00. The unstated finding was that each mortgage payment was equal until maturity. Therefore, Jubilee is calculated based upon extending the payments in equal amount ($600.00) until the debt is paid in full. [Dennis]'s obligation continued until the payment at the 86th percentile. Using $81,000.00 and $600.00 per month at 7.75% from September 1995 until final payment is 320 payments. The 86th percentile is payment 276 in August 2018.
Footnote 2  Using the actual balance and payment amount would make the Jubilee payment the 292nd payment in December 2019. The Court will follow its findings rather than the new information now provided that the balance and payment amounts were inaccurate.
This mortgage was on the former marital home that was awarded to [Kathy]. The Court thought that the mortgage debt was amortized, but it was not. After 23 monthly payments of $608.95, the 24th payment on December 29, 1995, was a balloon payment of the remaining principal and interest. Neither party returned to court when that event occurred. . . . In March 2005, [Dennis] asserts that he has paid the $35,000.00 in monthly principal installments and Jubilee has arrived. [Dennis] asserts that . . . no interest was owed on this obligation.
[Dennis] is in error. The Court awarded [Kathy] approximately $35,000.00 payable with interest over time until Jubilee. The interest rate on the existing mortgage was 7.75%. However, an amortization of $35,000.00 at 7.75% payable at $300.00 per month beginning with a payment in September 1995 does not alternatively calculate the date of Jubilee. The day of Jubilee is calculated by the formula as directed by the 1995 judgment and yields a different interest rate than 7.75% and a different date than using the original promissory note rate and principal. . . . [In a footnote, the court stated, ". . . If you use $35,000.00 for principal, the actual interest rate is 8.96%."]
. . . The date of Jubilee was established in 1995 to be the 276th payment in August 2018. . . . The total owed by [Dennis] based upon the judgment of 1995 remains $300.00 per month for 276 payments.
¶ 10. In Prescott v. Prescott, 736 So.2d 409, 416 (¶¶ 33-35) (Miss.Ct.App.1999), this Court reviewed a chancellor's interpretation of his own order. In 1995, the chancellor entered an order for temporary support to be paid until further notice. Id. at 416 (¶ 33). On December 20, 1996, the chancellor issued an opinion granting the *909 divorce and setting out payment distributions. Id. The final judgment on this opinion was not entered until February. Id. The parties disputed over whether the December opinion or the February judgment constituted further notice. Id. at (¶ 34). The chancellor found that the December opinion terminated the husband's temporary support obligation. Id. at 416-17 (¶ 36). We affirmed and held that, "[s]ince temporary support was to continue until further order, and the chancellor declined to interpret his December 20, 1996 letter opinion as continuing the temporary support, we find that to be within his discretion." Id. at 417 (¶ 36).
¶ 11. Here, the chancellor acted within his discretion by interpreting his 1995 judgment to mean $35,000 over time with interest. In the original 1995 opinion, the chancellor spoke in terms of current values. He did not award Kathy the total sum of $35,000, but rather the present (1995) value of $35,000. He ordered this current value of $35,000 would be paid over time. The time value of money is reflected in interest payments. If Dennis were ordered to pay $35,000 in a lump sum, this would equal the value of $35,000 to Kathy in 1995. In order to pay Kathy the equivalent value of $35,000 over time, Dennis would be required to pay $35,000 plus interest.
¶ 12. Furthermore, the 1995 judgment contemplates that Kathy and Dennis would pay the first eighty-six percent of the mortgage debt fifty/fifty. As for the last fourteen percent of the mortgage, Kathy will bear that cost alone. This is likewise the result of the 2005 clarification. Accordingly, we find no error in the chancellor's decision on this issue.
II. Did the chancellor err in dividing the property?
¶ 13. Dennis also makes several arguments that the ordered payments go against the law of equitable distribution. Kathy responds that Dennis is procedurally barred from bringing these arguments and that the chancellor's judgment was based on both the facts and the law. We agree.
¶ 14. The remainder of Dennis's arguments attack the chancellor's decision in the 1995 opinion and judgment. These issues are raised for the first time in this appeal. For ten years after the original opinion and judgment, and even at the hearing on the petitions for clarification, Dennis never argued that the chancellor was without authority to require Dennis to pay his portion of the property division out over time. All Dennis argued was that he had made all the monthly payments required of him. Dennis is therefore procedurally barred from raising these arguments on appeal. Jurney v. Jurney, 921 So.2d 372, 377 (¶ 19) (Miss.Ct.App.2005).
¶ 15. Procedural bar notwithstanding, Dennis's arguments are without merit. First, Dennis argues that the chancellor acted outside his authority by awarding Kathy an amount greater than for which she pled. The record reveals that Kathy did not plead for a specific judgment amount, neither in the original divorce nor in her counter-petition for clarification. In her counter-petition, she merely asked the chancellor to specify the date of Jubilee. She did not put forward any interpretation of her own as to when that would be. Dennis, however, points to a post-trial letter from Kathy's attorney to the judge and to Dennis's attorney. Dennis claims that in this letter Kathy pleads that she is entitled to $21,616.02 more in mortgage payments. This is not true. Kathy's attorney makes an argument that the payments extend well beyond what the chancellor eventually would order. In the *910 alternative, Kathy's attorney asserts that even accepting Dennis's interpretation, Dennis still owes $21,616.02.
¶ 16. Second, Dennis argues that the chancellor acted outside his jurisdiction by dividing non-marital property. Dennis reasons that since he is using cash earned after the marriage to pay Kathy, then Kathy is getting Dennis's separate property and not marital property. This ignores what Dennis purchased with these payments. Indeed, Dennis was paying Kathy for her interest in Wilkerson, Inc., which was marital property. The money for the payment came from Dennis's earnings at Wilkerson, Inc. Moreover, the payments were used to decrease a marital debt and increase Kathy's equity in the former marital residence.
¶ 17. Third, Dennis argues that the property division award "is in effect an award of alimony without the required consideration" of the Armstrong factors. Dennis gives no basis for this characterization, except for the fact that the award results in monthly payments. The judgment is clear that the award was to compensate Kathy for her share of marital property, i.e., stock in Wilkerson, Inc. Clearly, the payment was for property division, not alimony. Unlike alimony, the payment was not contingent upon Kathy's remarriage or Dennis's death. In fact, the payment was not contingent upon anything. It was a fixed amount, financed for a fixed period of time, to compensate Kathy for her share of the marital property.
¶ 18. Finally, Dennis cites Ferguson v. Ferguson, 639 So.2d 921, 929 (Miss. 1994), and argues that equitable division must be used to "eliminate periodic payments." Therefore, he reasons that the chancellor was without power to order periodic payments. Ferguson sets out a list of factors chancellors must consider in dividing marital property. Id. at 928. One of many factors is "[t]he extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties." Id. (emphasis added). In other words, where a spouse's property rights increase, his or her alimony recedes. Id. at 929. Rather than require a lump sum payment for property distribution, the chancellor allowed Dennis to finance his property division obligation through monthly payments. Ferguson does not prohibit this arrangement. Accordingly, we find no merit to this issue.
III. Is Dennis obligated to pay for his sons' counseling and Neal's braces?
¶ 19. Kathy argued that Neal and Seth's counseling and Neal's braces are reasonable medical expenses, and Dennis was obligated to pay these expenses. In the alternative, she argued that she was entitled to a modification of child support to cover these expenses. Dennis counters that the chancellor's order was supported by substantial credible evidence, and there was no material change in circumstances.
A. Counseling expenses
¶ 20. On October 5, 2004, Neal and Seth had separate, psychological counseling sessions with Dr. Debbie K. Wells of Wells Counseling Associates, Inc. Kathy testified the reason for the sessions were Neal and Seth's feelings associated with Dennis's lawsuit to take custody away from Kathy and with Dennis's refusal to exercise visitation since losing that custody battle. She testified that Neal and Seth, who expressed a desire to stay with her, had been feeling guilt placed upon him by their father. The bill, in the amount of $170, was admitted into evidence. This bill was for one session each with Neal and Seth. The boys had only one session each *911 between October 5, 2004 and the trial of this matter on May 26, 2005. The chancellor denied payment of the counseling bill, because he found Kathy "offered no proof that the one counseling bill of $170.00 was medically necessary."
¶ 21. Psychological counseling is a medical expense which may be assessed against a non-custodial parent. Martin v. Martin, 538 So.2d 765, 767 (Miss.1989). See also Miss.Code Ann. § 43-19-103(a) (Rev.2004). The custodial parent has the inherent discretion to determine the child's medical needs. Clements v. Young, 481 So.2d 263, 267 (Miss.1985). This discretion is limited by reasonableness. Id. For the non-custodial parent to be assessed with the expense, it must be reasonably necessary and reasonable in amount. Id.
¶ 22. Evidence that a medical bill has been paid or incurred is prima facie evidence that it is reasonable and necessary. Miss.Code Ann. § 41-9-119 (Rev. 2005); Clements, 481 So.2d at 267-68. This prima facie showing may be rebutted by the non-custodial parent. Id. at 269.
¶ 23. The bill Kathy submitted into evidence was sufficient to meet her prima facie case. However, Dennis established that the boys only went to counseling one time. The chancellor determined that this was substantial credible evidence to support a finding that the counseling was not medically necessary in the first place, because Dr. Wells did not order any follow up treatment. Although we might have concluded this differently, we cannot say that this was an abuse of the chancellor's discretion.
¶ 24. In the alternative, Kathy argues that she is entitled to a child support modification to require that Dennis pay the counseling bill. "To obtain a modification in child support payments, there must be a `substantial and material change in the circumstances of one of the interested parties arising subsequent to the entry of the decree sought to be modified.'" McEwen v. McEwen, 631 So.2d 821, 823 (Miss.1994) (quoting Gillespie v. Gillespie, 594 So.2d 620, 623 (Miss.1992)). To determine whether a material change has occurred, courts examine the following factors: (1) increased needs of older children, (2) an increase in expenses, (3) inflation, (4) a child's health and special medical or psychological needs; (5) the parties' relative financial condition and earning capacity; (6) the health and special needs of the parents; (7) the payor's necessary living expenses; (8) each party's tax liability; (9) one party's free use of a residence, furnishings, or automobile; and (10) any other relevant facts and circumstances. Tedford v. Dempsey, 437 So.2d 410, 422 (Miss. 1983). The change must have been unforeseeable since the most recent order. McEwen, 631 So.2d at 823.
¶ 25. In Clark v. Myrick, 523 So.2d 79, 81 (Miss.1988), the supreme court declined to consider a child's need for psychological counseling in a mother's argument for modification, where the child support decree already assessed the father with all medical expenses. We likewise find no need to entertain Kathy's modification argument, as Dennis is already liable under the existing order for all reasonable and necessary medical expenses.
¶ 26. Accordingly, we find that there was substantial credible evidence to support the chancellor's finding that the counseling was not medically necessary. This finding would not avail Kathy under the existing decree nor under a modification analysis, as she has failed to show that Neal and Seth have "special psychological needs." Therefore, we find that this issue lacks merit.
B. Neal's braces
¶ 27. Braces are a medical expense for which a non-custodial parent is *912 liable, so long as it is reasonably necessary for the child's health and well being, including mental and physical, and are the proper treatment. Smith v. Smith, 405 So.2d 896, 897-98 (Miss.1981). Whether or not braces are reasonably necessary is a question of fact. Id. at 898.
¶ 28. In 2001, Dennis had his own braces adjusted by Dr. Charles Atkins. Dennis asked Dr. Atkins to assess whether or not Neal would need braces in the future. Dr. Atkins went out in the waiting room and looked at Neal's teeth. Dr. Atkins noticed that Neal had an overbite, which he inherited from Dennis. Dennis testified that as a result of this consultation, he was under the impression that Neal did not need braces. Dr. Atkins testified that, while Neal had an overbite at the time, he considered Neal too young for braces.
¶ 29. In 2004, Neal's dentist Dr. Susanne Nichols recommended that Neal see an orthodontist about braces. Kathy discussed this with Dennis, and Dennis offered no objection. He said only that he had made arrangements for payment with Dr. Atkins's office.
¶ 30. On September 21, 2004, Dr. Atkins began treating Neal for an overbite, eventually putting braces on Neal's teeth. By affidavit submitted and entered into evidence, Dr. Atkins testified that the procedure for Neal was both cosmetic and medical. Specifically, the medical benefits were "reduced periodontal involvement, fewer cavities and a lessened chance of joint dysfunction."
¶ 31. In his trial testimony, Dr. Atkins testified that, without the braces:
the odds are definitely that [Neal] would have more periodontal involvement because of the crowding, that he would have some cavities that he normally wouldn't have if his teeth were straight. And there's less chance of dysfunction because you've got the teeth functioning correctly. But there's no way for me to tell you that we're definitely going to get that in this particular case. But as a general rule, that's pretty true.
When asked what was the primary reason for Neal's braces, Dr. Atkins testified:
Well, he has a deep bite. Showed no lower anterior teeth, which causesin the future, it usually causes problems with the joints. Not usually, but it occurs much more frequently in a deep bite case than a normal bite case. It would improve his smile. It would get rid of the crowding so that he could brush and floss his teeth ideally.
¶ 32. The chancellor denied payment for the braces, because Kathy "has failed to establish that the instant braces are a medical expense." We find this to be error. Dr. Atkins's testimony went uncontradicted. Dr. Atkins testified that Neal's braces were needed for medical reasons. The chancellor's finding otherwise was therefore not supported by substantial credible evidence. We reverse and render. We find that Dennis is liable for payment of all medical expenses related to Neal's braces.
¶ 33. THE JUDGMENT OF THE CHANCERY COURT OF LOWNDES COUNTY IS AFFIRMED ON DIRECT APPEAL AND AFFIRMED IN PART AND REVERSED AND RENDERED IN PART ON CROSS-APPEAL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. CARLTON, J., NOT PARTICIPATING.
NOTES
[1] This appears to be a clerical error as Dennis's overpayments were only $4.47 per month.
[2] The term "Jubilee," as used here, comes from the biblical concept known as the Year of Jubilee, which is a year of celebration and forgiveness. See Leviticus 25:8-54.