## SPARKS et al. v. REDDOCH et al.

(In Banc. June 12, 1944. Suggestion of Error Overruled, July 6, 1944.)

[18 So. (2d) 450. No. 35643.]

A. S. Scott, of Laurel, for appellants.

612

Shannon, Beard & Pack, of Laurel, for appellees.

614

Argued orally by **A. S. Scott**, for appellant, and by **Sam V. Pack**, for appellee.

**Anderson, J.**, delivered the opinion of the court.

Wine and beer were being legally sold in Jones County. In September, 1943, proceeding under the authority of chapter 171, Laws 1934, and Chapter 224, Laws 1942, Section 10208, 7 Miss. Code 1942, more than 20% of the qualified electors of the county petitioned the board of supervisors to submit to the voters of the county the question whether "the transportation, storage, sale, distribution, receipt, and/or manufacture of such beverages" should be permitted in Jones County. The question was accordingly submitted and the election resulted against permitting such possession, sale, etc. The board of supervisors thereupon declared the result and made the proper order on their minutes to that effect.

Appellants up to that time were engaged in the lawful sale of beer and wine. Thereupon they filed their bill in the chancery court to enjoin appellees, the sheriff of the county and other enforcing officers, from carrying out the order. The cause was heard on bill and demurrer, resulting in sustaining the demurrer and dismissing the bill. From that decree this appeal is prosecuted.

Appellants contend that the proceedings were void on their face for two main reasons: (1) Jones County has two Judicial Districts, Ellisville is the county seat of one District and Laurel of the other. More than 20% of the qualified electors of the whole county, disregarding the Districts, petitioned for the election. In other words, the petition and other proceedings were silent as to whether more than 20% of each District petitioned for the election. This ground of attack is that the law required

more than 20% of each of the Districts.. (2) The other ground is that neither the proceedings, the ballots, nor the order of the board of supervisors declaring the result excepted therefrom that provision of the statute ''that nothing in this section shall prohibit the consumer from possessing or the taking into any county electing to come from under this section, said wines and beers for his personal consumption.''

We are of opinion there is no merit in either contention. If the first ground relied on be sound, it simply means that in all respects Jones County was divided into two separate and distinct counties. Chapter 169, Laws of 1906, divided Jones County into two Judicial Districts. The caption of the statute itself fairly states its provisions, it is in this language: ''An Act to divide the county of Jones into two Circuit and Chancery Court Districts, and to fix the jurisdiction of the courts, and to provide for holding same in each district, and to locate the county seat in the Second District thereof, and to provide for the building of a courthouse and jail therein, and for the transcribing of all muniments of title of lands lying within the Second District of said county, and to provide for the payment of all expenses incurred in carrying out the provisions of this Act.'' Nowhere in the statute is there any provision which either expressly or by reasonable implication requires that an election of this character shall be petitioned for by a majority of the qualified electors of each of the separate districts. Section 11 of the Act concludes with this language, referring to the board of supervisors of the county, ''their jurisdiction shall extend over the entire county just as if it were not divided into two separate districts.'' Under the purpose and language of the statute the county acted as a whole in these proceedings and not by districts.

The other question involved was expressly decided in Moffett v. Board of Sup'rs of Attala County, 181 Miss. 419, 179 So. 352. The court used this language in that case: ''Neither do we think that the fact that the order

of the board and the ballots used in the election submitted to the voters the right also to exclude the possession of wine and beer in the county had the effect of vitiating the election, even though section 2 of chapter 171, Laws 1934, only conferred the right to hold an election for the exclusion of the transportation, storage, sale, distribution, receipt, and manufacture of such beverages. The proposal, as contained in the order of the board and in the ballot, to exclude even the possession of wine and beer in the county, should have had a tendency to increase, rather than diminish, the vote against the exclusion of these beverages, and of which the appellants would not be entitled to complain. At any rate, the order of the board declaring the result of the election and directing the exclusion did not undertake to exclude possession. If it had done so, it would have been ineffective to that extent, since chapter 171, Laws 1934, recognized the right to possess these beverages at any and all events.''

Under Chapter 113, Laws of 1908, Sections 2634, 2635 and 2636, 2 Miss. Code 1942, licensed druggists may possess and on a physician's prescription sell alcohol for medicinal purposes, and under certain conditions a minister of the gospel, pastor, priest or other officer of an organized church may possess wine for sacramental purposes. There would be just as much reason for the contention that the election was void because the proceedings did not expressly except such possession and sales.

We pretermit passing on the question whether the chancery court had jurisdiction, because the decision of that question either way would not affect the result.

In the final decree dissolving the injunction the court allowed appellees an attorney's fee against appellants in the sum of $800. It is argued that that action of the court was error. There is no evidence in the record in reference to the fee. It was simply allowed on the record made by the pleadings and the final decree. The allowance of the fee was so largely in the discretion of the chancellor that we decline to interfere with it. The

amount of fees to be allowed for the dissolution of an injunction is addressed to the sound discretion of the chancellor; ''he knows exactly what services the several solicitors have rendered; he is informed as to the importance of the contest and the responsibility resting upon counsel for the defendant, as well as their actual services. He is familiar with the established usage and practice relative to the amount of fees to be charged in his Court.'' Mississippi Chancery Practice, Section 465.

Affirmed.