604 So.2d 726 (1992)
Herb A. KELSO
v.
David K. McGowan, S.E. Pollack, Sal Todaro and Trustmark National Bank.
No. 89-CA-0532.
Supreme Court of Mississippi.
May 27, 1992.
Rehearing Denied July 29, 1992.
*727 J.M. Ritchey, Canton, for appellant.
David K. McGowan, Jackson, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and McRAE, JJ.
McRAE, Justice, for the Court:
This case involves a foreclosure under the dragnet clause of a second deed of trust executed by Herb A. Kelso ("Kelso") for the benefit of S.E. Pollack ("Pollack") and Sal Todaro ("Todaro") with David K. McGowan ("McGowan") as trustee with power of sale. Kelso sought to enjoin the foreclosure in the Chancery Court of Madison County, but the court rendered judgment for the defendants. Kelso assigns the following as error:
I. The payment of Kelso's two dishonored checks to Pollack was not secured under the dragnet clause of the deed of trust in favor of both Pollack and Todaro.
II. Under the parol evidence rule, the trial court was required as a matter of substantive law to enforce the agreement of the parties as set forth in their written contracts of September 11, 1987.
III. There was no valid consideration for Kelso's two dishonored checks to Pollack.
IV. Kelso's two dishonored checks to Pollack are voidable under the doctrine of economic duress and business compulsion.
V. The amount awarded as statutory damages exceeds the amount allowed by law.
VI. The amount awarded as reasonable attorney fees upon dissolution of the preliminary injunction exceeds the amount which the evidence shows the appellees to have actually incurred for having been wrongfully enjoined or restrained.
Finding no reversible error, we affirm.

FACTS AND PROCEEDINGS
Most of the facts are undisputed although the parties, in their colorful briefs, paint the common picture using dramatically different tints and shadings.
In 1978, Pollack and Todaro purchased a seven-acre parcel for $140,000, or $20,000 an acre. Pollack and Todaro sold Kelso an undivided one-third interest in the seven-acre parcel in 1982 for about $46,000 plus Kelso's promise to develop the property at his own expense. In about 1982, Kelso and Pollack purchased for $150,000 a three-acre parcel adjoining the seven-acre tract.
Kelso encountered serious financial difficulties in 1987. In order to regain his financial footing, he sought to obtain a bank loan for $460,000. Sometime in June of 1987, Kelso requested the assistance of Pollack and Todaro in obtaining the loan. According to Kelso's testimony, Pollack and Todaro agreed to guarantee or co-sign a loan for $260,000 to be secured by the seven-acre tract, and Pollack agreed to guarantee or co-sign an additional loan for $200,000 to be secured by the three-acre tract. The appellees contend, on the other hand, that they did not originally agree to guarantee or co-sign, but merely agreed to pledge their interests in the subject property. The chancellor made no finding with regard to this issue. Thus, to the extent the issue is relevant to the resolution of *728 this appeal, the appellee's version controls. Shearer v. Shearer, 540 So.2d 9, 11 (Miss. 1989). As consideration for Pollack's and Todaro's promises of assistance, Kelso agreed to use part of the loan proceeds to retire the purchase money mortgage still owed by the three of them on the seven-acre parcel. The mortgage balance was approximately $30,000. The agreement was reduced to writing but was never signed.
By late August of 1987, Kelso had obtained loan commitments from two banks  Eastover Bank and Trustmark Bank. Eastover Bank agreed to commit to a $200,000 loan secured by the three-acre tract, provided that Pollack would agree to pledge his undivided interest in the property and guarantee the loan; Trustmark Bank agreed to commit to a $260,000 loan secured by the seven-acre tract, provided that both Pollack and Todaro would agree to pledge their undivided interests in the property and guarantee the loan.
On the eighth or ninth day of September 1987, Pollack and Todaro met with Kelso and agreed to guarantee the Eastover and Trustmark loans (in addition to pledging their property interests). In exchange for their guaranties, however, they demanded that Kelso agree to give each of them a $50,000 note, collectively secured by a second deed of trust on Kelso's interest in the two subject properties.[1] On September 9, 1987, Kelso accepted their demands, and the new agreements were reduced to writing.
Pollack and Todaro both testified that Kelso also agreed on September 9 to provide the following additional consideration for the new agreements: (1) $20,000 to Pollack for guaranteeing the Eastover and Trustmark loans; and (2) $10,000 to Todaro for guaranteeing the Trustmark loan. Kelso contends that Pollack and Todaro did not demand the additional $30,000 until the day of closing. The written agreements which resulted from the September 9 meeting do not mention the additional $30,000.
The Eastover and Trustmark loans were both closed on Friday, September 11, 1987. At the Eastover closing, Kelso and Pollack signed a promissory note and executed a deed of trust in favor of Eastover on the three-acre parcel. The written contract between Kelso and Pollack regarding the Eastover guaranty was also executed, but Pollack did not at this time request a $10,000 payment.
Later that same day, the Trustmark loan was closed. According to Kelso's testimony, Pollack and Todaro demanded the three $10,000 payments for the first time immediately before the Trustmark closing. Before Kelso made the requested payments, the following documents were executed (not necessarily in this order): (1) Kelso, Pollack and Todaro signed the writing which represented the September 9 agreement concerning the Trustmark loan; (2) all three signed a note promising repayment of $260,000 to Trustmark; (3) all three also executed a deed of trust in favor of Trustmark; (4) Kelso signed a $50,000 promissory note payable to Pollack; (5) Kelso signed a $50,000 promissory note payable to Todaro; and (6) Kelso executed a deed of trust in favor of Pollack and Todaro securing the two $50,000 promissory notes. Kelso then wrote three personal checks, two to Pollack for $10,000 each, and one to Todaro for $10,000. Lastly, Trustmark disbursed the loan.
When Pollack deposited the two $10,000 checks, they were returned for insufficient funds.[2] Kelso allegedly promised to pay *729 Pollack $20,000 in cash and pick up the checks, but as of November 1987, the sum had never been paid. On November 5, 1987, McGowan, Pollack's attorney, sent Kelso a demand letter threatening foreclosure under the dragnet clause of the deed of trust which secured the $50,000 notes to Pollack and Todaro. Kelso did not pay, so McGowan commenced foreclosure proceedings with sale scheduled for February 24, 1988. Todaro, though a beneficiary under the deed of trust, did not actively participate in the foreclosure proceedings. At all relevant times, the principal $50,000 debts secured by the subject deed of trust were not yet due.
On February 19, 1988, Kelso initiated the instant proceedings seeking to enjoin the foreclosure. Following a hearing on February 24, 1988, the chancellor granted Kelso a preliminary injunction.
The chancellor held a final hearing on March 7, 1988, at which defendants introduced evidence of $6,580.74 in fees. In their subsequent Supplement to Motion to Dissolve Preliminary Injunction and Suggestion of Damages, defendants produced documents indicating a total of $10,577.18 in fees. In a final judgment entered on August 18, 1988, the chancellor dissolved the preliminary injunction and awarded the defendants $10,000 in attorney's fees and $5000 in statutory damages. Statutory damages were computed at the rate of five percent of the $100,000 principal indebtedness secured by the subject deed of trust. The foreclosure sale occurred on July 12, 1989.

LAW

I. THE PAYMENT OF KELSO'S TWO DISHONORED CHECKS TO POLLACK WAS NOT SECURED UNDER THE DRAGNET CLAUSE OF THE DEED OF TRUST IN FAVOR OF BOTH POLLACK AND TODARO.
Pollack sought to collect the amount of Kelso's two dishonored checks through foreclosure under the dragnet clause found in the deed of trust which secured Kelso's $50,000 notes to Pollack and Todaro. The subject dragnet clause states: "This Deed of Trust shall also secure any and all other Indebtedness of Debtor due to Secured Party... ." The deed of trust identifies "S.E. Pollack and Sal Todaro" as the "Secured Party." Kelso maintains that since the dragnet clause secured only debts owed to "Secured Party," and since the instrument refered to Pollack and Todaro collectively as "Secured Party," then the dragnet clause did not secure the two dishonored checks  an alleged debt owed to Pollack individually.
Dragnet clauses are valid and enforceable in Mississippi, Whiteway Finance Co. v. Green, 434 So.2d 1351, 1353 (Miss. 1983), if properly executed and stated in clear and unambiguous language. Newton County Bank v. Jones, 299 So.2d 215, 218 (Miss. 1974). Kelso's position is that the term "Secured Party" is at best ambiguous, thus rendering the dragnet clause unenforceable. See Davis v. Crawford, 175 Miss. 493, 168 So. 261, 262 (1936) (ambiguous dragnet clause unenforceable with regard to other or subsequent debts which parties did not intend to be covered by deed of trust).
To support his position, Kelso cites cases where this Court has held that a dragnet clause cannot be used to collect a debt owed by only one of multiple joint debtors unless the clause specifically and expressly allows it. See Davis, 168 So. at 262 (in deed of trust executed by husband and wife, dragnet clause which secured future advances made to "them" did not secure advance made only to husband); Holland v. Bank of Lucedale, 204 So.2d 875, 877 (Miss. 1967) (same); Walters v. Merchants & Manufacturers Bank of Ellisville, 218 Miss. 777, 67 So.2d 714, 717 (1953) (same). Kelso's analogy to these cases is flawed since each of them involves the collection of debts owed by one of multiple debtors. The case sub judice involves a debt owed to one of multiple creditors.
The rationale undergirding the strict construction of dragnet clauses in co-debtor situations is that one co-debtor should not be held to have risked his equity for the future debts of another debtor absent a *730 clear expression of intent. Davis, 168 So. at 262; see Hudson v. Bank of Leakesville, 249 So.2d 371, 373 (Miss. 1971) (dragnet clause liberally construed in favor of co-debtor). Davis, Holland, Walters, and similar cases all involve situations where multiple debtors own collateral jointly but use it to secure individual and separate debts. If a creditor were allowed to foreclose against one such debtor, the other co-debtors would be in danger of losing their interest in the collateral without ever having defaulted on their own debts. A co-creditor does not bear an analogous risk. A non-foreclosing co-creditor, upon foreclosure by another co-creditor, merely exchanges his security interest for a share of the sale proceeds plus a right to sue for any deficiency.
Kelso argues further that since the subject dragnet clause is ambiguous, the court must determine the intent of the parties by construing the instrument against Pollack, the drafter.[3]See Trapp v. Tidwell, 418 So.2d 786, 792 (Miss. 1982) (deed of trust must be construed most strongly against party who drafted it). Kelso suggests that when construing the dragnet clause in his favor, this Court should find that the phrase "all other Indebtedness owed to Secured Party" refers only to debts owed to Pollack and Todaro jointly, not individually.
Kelso's proposed interpretation is facially contradicted by the express language of the deed of trust. The premises clause refers to the principal debt as follows: "WHEREAS, Debtor is indebted to Secured Party in the full sum of ... $100,000.00 ... evidenced by two promissory notes ... in favor of Secured Party." (emphasis added). There is no way that the term "secured party," as used in the premises clause, can logically refer to the creditors as a collective entity: Pollack and Todaro do not hold the two promissory notes jointly. One note is in favor of Pollack only; the other is in favor of Todaro only.
If the term "secured party" is not limited to a collective entity in the premises clause, then it cannot be so limited in the dragnet clause. See Harris v. Griffith, 210 So.2d 629 (Miss. 1968) (each word and clause throughout entire instrument should be reconciled and given meaning if reasonably possible). Consequently, we must read the dragnet clause as securing "all other Indebtedness" of Kelso due to Pollack and/or Todaro, either jointly or individually.
We hold that Kelso's two dishonored checks to Pollack were secured under the dragnet clause of the subject deed of trust.

II. UNDER THE PAROL EVIDENCE RULE, THE TRIAL COURT WAS REQUIRED AS A MATTER OF SUBSTANTIVE LAW TO ENFORCE THE AGREEMENT OF THE PARTIES AS SET FORTH IN THEIR WRITTEN CONTRACTS OF SEPTEMBER 11, 1987.
Kelso claims that the parol evidence rule prevents Pollack from introducing evidence showing that Kelso agreed to make the additional $10,000 payments. He maintains that the written agreements executed on September 11, which do not provide for such payments, include a complete statement of the consideration owed to Pollack in exchange for Pollack's agreement to guarantee the subject loans.[4]
*731 The evidence shows that the written agreement pertaining to the Pollack's guaranty of the Eastover loan was executed at the Eastover closing. Kelso executed both $10,000 checks later in the day at the Trustmark closing. The parol evidence rule "applies only to pre-contractual negotiations ... [and] does not bar evidence of subsequent ... modification." E. Farnsworth, Contracts § 7.6 at 474 (1982); see also J. Calamari, Contracts § 3.2(a) at 136 (3d ed. 1987). Professor Corbin states:
Any contract, however made or evidenced, can be discharged or modified by subsequent agreement of the parties... . The existence and the terms of this modifying or discharging agreement can be proved by the same kinds of evidence that are admissible to prove any other kind of contract... . But after these issues have been determined and the court finds, as a fact, the making and the terms of the modifying or discharging agreement, we are no longer interested in the terms of the antecedent contract for purposes of enforcement of them, in so far as those terms have been nullified by the new agreement.
3 A. Corbin, Contracts § 574 at 373-75 (1960).
Since the writing whereby Pollack agreed to guarantee the Eastover loan was executed prior to Kelso's promise to pay an additional $10,000, the parol evidence rule does not apply to the parties' agreements relating to the Eastover loan.
Regarding the Trustmark loan, the record indicates that the guaranty agreement and Kelso's promise to pay an additional $10,000 were executed at the same time. The law is clear that where two or more writings are executed contemporaneously, the instruments are deemed to constitute a single agreement for parol evidence purposes. See 4 S. Williston, Contracts § 628 at 904 (3d ed. 1961). 17 Am.Jur.2d, Contracts, § 388 (1991). Consequently, the Parole Evidence Rule does not prevent Pollack from introducing evidence of Kelso's promise to pay an additional $10,000 in exchange for Pollack's guaranty of the Trustmark loan.
The assignment of error must fail.

III. THERE WAS NO VALID CONSIDERATION FOR KELSO'S TWO DISHONORED CHECKS TO POLLACK.
Kelso contends that Pollack gave no consideration in exchange for the two dishonored checks since Pollack had already orally contracted on September 9 to guarantee the Eastover and Trustmark loans in exchange for: (1) the promise of a $50,000 promissory note, and (2) Kelso's agreement to satisfy the purchase money mortgage on the seven-acre parcel. Kelso insists that by demanding more money as a condition of his guaranty, Pollack was seeking additional consideration for something he was already legally bound to do. Kelso thus bases his lack-of-consideration argument on the general principle that "where the promise of one is merely a repetition of a subsisting legal promise, and the duties, obligations, and burdens imposed upon such party by the contract are in no way varied, altered, or changed, there is no consideration for the other's promise to pay a greater price." Leggett v. Vinson, 155 Miss. 411, 124 So. 472, 473 (1929); see King v. Duluth, M & N Ry. Co., 61 Minn. 482, 63 N.W. 1105, 1106 (1895) (in absence of exceptional circumstances making increased consideration equitable, promise to pay increased compensation for that which other party is already obligated to do is unenforceable) (cited with approval in Leggett).
It is first important to note that despite Kelso's emphasis on the alleged September 9 oral agreements, the chancellor implicitly found that no final, binding contract arose until the written agreements were executed on September 11. Absent such a finding, the trial court would have had no basis for concluding that Kelso's promise to pay the extra $20,000 was supported by consideration. See Walters v. Patterson, 531 So.2d 581 (Miss. 1988) (where trial court makes no specific finding of fact, Supreme Court assumes that trial court made sufficient findings of fact to support verdict); Rives v. Peterson, 493 So.2d 316, 317 (Miss. 1986) *732 (same); see also Shearer v. Shearer, 540 So.2d 9 (Miss. 1989) (absent express finding of fact, Supreme Court assumes trial court resolved issue in favor of appellee).
The written guaranty agreements and Kelso's checks for additional consideration were all executed at the loan closings on September 11. According to Thornton Bros., Inc. v. Gore, 252 Miss. 27, 172 So.2d 425, 429 (1965):
[A] single consideration may support several counter-promises made by the other party to the transaction. While the consideration for one contract will not support a distinct and independent contract, where two instruments are executed as part of the same transaction, the benefit accruing to one of the parties in one instrument may be the consideration for the promise of such party in the other.

(emphasis in original) (quoting 17 C.J.S. Contracts § 71 at 753-54 (1963).
We hold that Kelso's two $10,000 checks to Pollack and the written agreements in which Pollack agreed to guarantee the two bank loans to Kelso were all executed as part of the same transaction.
One could argue that the $10,000 check relating to the Eastover loan was not executed as part of the Eastover "transaction" since Kelso wrote the check after the Eastover loan had already been closed. The record reveals, however, that the two loans were interlocking. Each bank agreed to lend Kelso money with the understanding that the other bank would also advance a loan. Accordingly, both loan closings constituted parts of a single "transaction." Since both $10,000 checks were executed during the course of the Trustmark closing, the $10,000 check relating to the Eastover guaranty falls within the parameters of the general "transaction" despite the earlier closing at Eastover Bank.
Pollack's promise on September 11 to guarantee the two bank loans to Kelso was sufficient consideration to support the promises Kelso made in the written agreements as well as his promise to pay an additional $20,000.

IV. KELSO'S TWO DISHONORED CHECKS TO POLLACK ARE VOIDABLE UNDER THE DOCTRINE OF ECONOMIC DURESS AND BUSINESS COMPULSION.
Kelso argues that Pollack, by threatening to breach his September 9 oral agreements, wrongfully forced him to agree to the extra $30,000 payments against his will. Accordingly, he maintains, the agreements are voidable under the doctrine of economic duress or business compulsion.
This Court defined the elements of economic duress in Duckworth v. Allis-Chalmers Manufacturing Co., 247 Miss. 198, 150 So.2d 163 (1963). The Court there stated that to invalidate a contract on grounds of economic duress, the complaining party must establish: (1) that the dominant party threatened to do something which he had no legal right to do; and (2) that the wrongful threat overrode the volition of the victim and caused him to enter an agreement against his free will. Id., 150 So.2d at 165; accord Rich & Whillock v. Ashton Dev., 157 Cal. App.3d 1154, 204 Cal. Rptr. 86, 89 (1984); Totem Marine Tug & Barge, Inc. v. Alyeska Pipeline Serv. Co., 584 P.2d 15 (Alaska 1978); 13 Williston, Contracts § 1617 at 704 (1970). A threat to breach an enforceable contract can constitute a "wrongful" act. Totem Marine, 584 P.2d at 21-22; Austin Instrument, Inc. v. Loral Corp., 29 N.Y.2d 124, 324 N.Y.S.2d 22, 24-26, 272 N.E.2d 533, 535 (1971); Restatement (Second) of Contracts, § 176(1)(d) (1979).
We have already established that Pollack was not contractually bound, prior to the September 11 closings, to guarantee the loans to Kelso. According to McGehee v. McGehee, 227 Miss. 170, 183, 85 So.2d 799, 804 (1956): "It is never duress to threaten to do that which a party has a legal right to do." In the absence of a contractual obligation, Pollack's acknowledged threat not to co-sign unless Kelso paid him the subject $20,000 could not have been "wrongful."
The assignment of error is without merit.

*733 V. THE AMOUNT AWARDED AS STATUTORY DAMAGES EXCEEDS THE AMOUNT ALLOWED BY LAW.
Miss. Code Ann. § 11-13-35 (1972) provides:
When an injunction, obtained to stay proceedings on a judgment at law for money, shall be dissolved, in whole or in part, damages at the rate of five per centum shall be added to the judgment enjoined, or to so much thereof as shall be found due, including the costs... . Damages at the same rate shall be allowed upon the dissolution of injunctions to stay sales under deeds of trust ... and such damages may be added to the debt, and collected by the sale of the property, or execution may issue from the chancery court for the same, together with the costs of suit, unless the value of the property, the sale of which was restrained, be less than the amount of the debt, in which case the damages shall be computed on the value of the property... .
Kelso contends that upon the dissolution of his injunction, the chancellor erred by imposing statutory damages amounting to five percent of $100,000, the principal debt secured by the subject deed of trust. Instead, Kelso argues, the chancellor should have calculated statutory damages as five percent of $20,000, the collateral debt which prompted the foreclosure.
Pollack maintains, on the other hand, that the five percent penalty should be calculated by reference to the entire debt secured by the deed of trust. Thus, according to Pollack, the chancellor could have awarded even more than he did: He could have imposed damages amounting to five percent of all debt secured by the deed of trust (including the $100,000 principal debt, the $20,000 which prompted the foreclosure, and, in Pollack's view, the 25 percent bad check penalty of Miss. Code Ann. § 11-7-12 (1972) along with attorney's fees).
Kelso justifies his position by noting that the $20,000 debt, not the $100,000 debt, gave rise to the foreclosure. The $20,000 debt was the only debt in default. Pollack counters in his brief by way of illustration:
If [Kelso's] argument were accepted, the statutory penalty upon dissolution of an injunction enjoining foreclosure of a million dollar property securing a $750,000 installment loan two installments (@ $500.00 each) in arrears, would be only $50.00! That was obviously not the intent of the legislature.
Pollack further observes that a deed of trust is indivisible. If a single deed of trust secures ten notes and only one is in default, the trustee must still sell the whole property; likewise, the proceeds from the sale are applied to the entire debt (all ten notes). The same principle demands that the § 11-13-35 penalty be calculated based on the entire debt, says Pollack.[1a]
Pollack has the better argument. In any event, it is noteworthy that Kelso sought to enjoin the foreclosure of the deed of trust. He did not seek merely to enjoin the collection of the alleged $20,000 debt. Kelso was trying to stop the train, not just the caboose. His penalty is determined accordingly.

VI. THE AMOUNT AWARDED AS REASONABLE ATTORNEY FEES UPON DISOLUTION OF THE PRELIMINARY INJUNCTION EXCEEDS THE AMOUNT WHICH THE EVIDENCE SHOWS THE APPELLEES TO HAVE ACTUALLY INCURRED FOR HAVING BEEN WRONGFULLY ENJOINED OR RESTRAINED.
Kelso admits that if the injunction was properly dissolved, Pollack was entitled to attorney's fees pursuant to MRCP Rule 65(c). Rule 65(c) provides in part:

*734 No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs, damages, and reasonable attorney's fees as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. (emphasis added).[2a]
Kelso's only contention is that since appellees put on proof at the trial of attorney's fees totaling $6,580.74, then the chancellor abused his discretion in awarding $10,000 in attorney's fees.
Kelso fails to note that appellees introduced the $6580.74 figure as proof of fees as of the day of the hearing (March 7, 1988). On April 1, 1988 appellees filed a Supplement to Motion to Dissolve Preliminary Injunction and Suggestion of Damages which itemized attorney's fees totaling $10,517.18 as of March 31, 1988. The chancellor set attorney's fees at $10,000 in his Order and Judgment of August 18, 1988.
According to Curphy v. Terrell, 89 Miss. 624, 42 So. 235 (1906), the chancellor can increase an award of attorney's fees following trial even "without any amended bill having been filed, and without any further steps to cause additional attorneys' fees." Id., 89 Miss. at 625, 42 So. 235; see also New Orleans, M. & C.R. Co. v. Martin, 105 Miss. 230, 62 So. 228, 229 (1913) (amount of attorney's fees in dissolving wrongful injunction left to chancellor's discretion).
The assignment of error is without merit.

CONCLUSION
Kelso is entitled to prevail on none of the six issues he raises on this appeal. He first contends that the dragnet clause in the deed of trust securing his debt to Pollack and Todaro does not cover a separate debt owed to Pollack alone. Construing the deed of trust as a whole, however, we conclude that the subject dragnet clause was intended to secure debts owed to the two creditors individually as well as debts owed collectively. The clause therefore secures the debt evidenced by Kelso's two $10,000 checks to Pollack.
Additionally, Kelso maintains that under the Parol Evidence Rule, the trial court should have excluded all evidence concerning Kelso's promise to pay an additional $20,000 in exchange for Pollack's guaranty. We find that Kelso executed both checks contemporaneously with or subsequent to the written agreements which he contends represent the complete agreement between himself and Pollack. The Parol Evidence Rule does not apply to contemporaneous or subsequent writings.
Kelso further argues that since Pollack made no additional promise and rendered no additional performance in exchange for Kelso's promise to pay an extra $20,000, the two checks for $10,000 were not supported by consideration. We hold that Kelso wrote the two checks as part of the same transaction in which Pollack agreed to co-sign the subject loans. Consequently, Pollack's guaranty constitutes consideration for all payments Kelso agreed to make, including the two checks for $10,000.
Kelso's duress argument is totally without merit. Pollack admittedly threatened Kelso by telling him that he (Pollack) would not co-sign the loans unless Kelso paid him $20,000 more than the figure which the parties had discussed two days earlier. Pollack nevertheless had every right to demand additional consideration because prior to the occasion on which he demanded the extra payments, he had never entered a final and binding agreement to provide a guaranty.
The chancellor's award of statutory damages and attorney's fees is fully supported by the law and the evidence. We affirm.
AFFIRMED.
*735 ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BANKS, JJ., concur.
NOTES
[1] Originally, Pollack and Todaro had only requested that Kelso retire the purchase money mortgage on the subject property in exchange for their helping him obtain the loans. See supra, at 727-28. Pollack and Todaro testified that they increased their demands in September because of the following: (1) in September they promised to guarantee the loans, whereas in June they had merely agreed to pledge their interests; (2) their potential risk was allegedly greater in September due to Kelso's financial deterioration; and (3) they desired to recoup the windfall allegedly Kelso gained by failing to develop the seven-acre parcel after promising to do so as part of his consideration for obtaining an interest in the property.
[2] Todaro apparently never cashed his $10,000 check, choosing rather to set off that amount against gambling debts owed to Kelso. He did not object to the foreclosure.
[3] Pollack argues that the Mississippi Bankers Association (an unrelated third party) drafted the form, not he. Pollack does not deny however, that he selected and completed the form.
[4] Pollack argues that Kelso waived the exclusion of parol evidence by failing to raise the issue at trial. This Court has clearly held, however, that since the parol evidence rule is substantive, it prevails even in the absence of objection. The Court in Edrington v. Stephens, 148 Miss. 583, 114 So. 387 (1927) stated:

Certain portions of the testimony tending to establish the oral agreement ... were admitted without objection on the part of the appellants, but this is of no consequence in deciding the question now presented, for ... this court [has] held that the rule that the terms of a written contract or conveyance cannot be varied or added to by parol evidence is not merely a rule of evidence, but is one of substantive law, and, in measuring the rights of the parties to a written contract or conveyance which, on its face, is unambiguous and expresses an agreement complete in all its essential terms, the writing will control.
Id., 114 So. at 389.
[1a] The text of the subject deed of trust supports Pollack's position. In relevant part, it states: "If Debtor shall be in default, ... then, in that event, the entire indebtedness ... shall, at the option of the Secured Party, be and become at once due and payable. (emphasis added). Thus, upon Kelso's default and Pollack's subsequent request for foreclosure, the entire indebtedness, not just the $20,000, became due. Kelso's assertion that the $20,000 debt was the only one in default at the time of foreclosure is therefore at least technically incorrect.
[2a] Pollack correctly notes that § 11-13-37 provides an independent statutory basis for awarding attorney's fees upon dissolution of an injunction. See Sparks v. Reddoch, 196 Miss. 609, 18 So.2d 450, 451-52 (1944) (defendant entitled to attorney's fees upon dissolution of injunction); Auger v. Gulfport Land Improvement Co., 95 Miss. 292, 48 So. 722, 723 (1909) (same).