872 So.2d 74 (2004)
Mary Jane SMITH, Appellant
v.
Thomas SMITH, Appellee.
No. 2001-CA-00905-COA.
Court of Appeals of Mississippi.
January 27, 2004.
Rehearing Denied May 4, 2004.
*75 Charles R. Brett, Tupelo, attorney for appellant.
J. Mark Shelton, Jana L. Dawson, attorneys for appellee.
Before MCMILLIN, C.J., BRIDGES and THOMAS, JJ.
THOMAS, J., for the Court.
¶ 1. Thomas Smith filed a complaint for modification and other relief from a divorce judgment and agreement of the Superior Court of Santa Clara, California, in the Chancery Court of Lee County. Mary Jane Smith filed a counter-claim alleging Thomas was in contempt for failure to pay her $15,000. The chancellor denied Thomas' request for modification and held that Thomas was not in arrears as to the payment of $15,000, but the chancellor did order Thomas to reimburse Mary Jane $167.43 for a plane ticket he deducted from one of her monthly checks. Aggrieved, Mary Jane appealed the denial of her counter-claim and asserts the following issues:

*76 I. THE TRIAL COURT ERRED WHEN IT PERMITTED THOMAS SMITH TO USE PAROL EVIDENCE TO IMPEACH THE PLAIN WRITTEN TERMS OF THE JUDGMENT OF THE SUPERIOR COURT OF CALIFORNIA.
II. THE TRIAL COURT ERRED WHEN IT PERMITTED THOMAS SMITH TO TESTIFY THAT HE HAD PAID MONEY HE OWED HIS WIFE WHEN HE FAILED TO PLEAD THE AFFIRMATIVE DEFENSES OF PAYMENT OR ACCORD AND SATISFACTION AS REQUIRED BY THE MISSISSIPPI RULES OF CIVIL PROCEDURE.
III. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT REFUSED TO ALLOW MARY JANE SMITH TO INTRODUCE ADDITIONAL EVIDENCE AND TESTIMONY THAT SHE HAD IN FACT PAID HER SHARE OF THE INCOME TAX LIABILITY AS ORDERED IN THE DIVORCE DECREE AS THAT WOULD DIRECTLY DISPROVE THOMAS SMITH'S TESTIMONY THAT THEY HAD A VERBAL AGREEMENT PRIOR TO THE DIVORCE DECREE THAT WAS NOT INCORPORATED INTO THE DIVORCE DECREE; THEREFORE, SHE COULD NOT HAVE OWED HIM ANY MONEY THAT WOULD IN ANYWAY HAVE OFFSET THE MONEY HE PLAINLY OWED HER AND HAD NOT PAID HER UNDER THE CALIFORNIA DECREE.
Finding error, we affirm in part and reverse and render in part.

FACTS
¶ 2. Thomas and Mary Jane Smith were married for approximately eighteen years and had two children during the marriage, a son and a daughter in their late teens at time of their divorce. Living in California at the time, Thomas and Mary Jane obtained a divorce based on irreconcilable differences in the Superior Court of Santa Clara, California. A judgment was issued divorcing the couple by the California court on April 14, 1997, with a final termination of marital status occurring three days later on April 17, 1997. A stipulation pendente lite was entered on June 30, 1997, in which the parties agreed upon some matters regarding how they would handle a tax liability of $31,000 from the year 1996. A final decree was not entered until June 11, 1998. By the time of the decree, Mary Jane had moved back to her original home town, Tupelo, Mississippi. Thomas remarried and lived in Massachusetts briefly before moving to Atlanta, Georgia.
¶ 3. Thomas and Mary Jane agreed in the divorce decree that Thomas would pay Mary Jane a total of $4,500 per month in child and spousal support. This amount would shift on a sliding scale over time beginning with more of the support money reserved for child support which would steadily decrease until shortly after the children had graduated from high school. At that point, the entire $4,500 would be paid as spousal support for Mary Jane.
¶ 4. In 2000, Thomas felt that a material change in circumstances warranted a modification of the judgment, and filed a complaint for modification and other relief in the Chancery Court of Lee County. Thomas requested that the chancery court terminate his obligation to pay spousal support, or in the alternative, decrease the amount owed. Thomas cited a mortgage payment he did not have at the time of the divorce, a new child by his subsequent marriage, the oldest child of his marriage *77 to Mary Jane obtaining employment, Mary Jane's becoming employed, and the diminution of his family's finances caused by the loss of his new wife's company.
¶ 5. Mary Jane filed a counter-claim against Thomas on December 6, 2000, alleging that Thomas was in contempt of the California order for failure to pay $15,000. Mary Jane alleged that the $15,000 was for an amount reflecting a sum sufficient to equalize the cash balances between life insurance policies held in each of their names. Thomas argued that he paid the sum of $30,000 for a joint tax obligation of which $15,000 would have been the obligation of Mary Jane and that he therefore was not in arrears.
¶ 6. The chancery court found that Thomas Smith had a gross income of $29,166 per month, an adjusted gross monthly income of $18,205.69, and total monthly expenses, including a $5,000 mortgage payment and $4,500 paid to Mary Jane, of $16,056.05. The chancery court, in denying Thomas' complaint, held that matters asserted by Thomas should have reasonably been anticipated at the time of the divorce and did not justify a reduction in support paid to Mary Jane.
¶ 7. In regard to the counter-claim, the chancery court found that the proof provided by Thomas clearly established that the sum was a result of payment of income taxes which the parties jointly owed. The chancery court denied Mary Jane's counter-claim and held that Thomas was not in arrears in the amount of $15,000. The court did find that Thomas Smith incorrectly deducted from one of Mary Jane's monthly support checks the price of an airline ticket for one of his children's friends when they visited with him. The court ordered Thomas to reimburse Mary Jane $167.43 within thirty days of the judgment. Mary Jane perfected an appeal to this Court regarding the denial of her counter-claim by the chancery court. Thomas requests that the chancery court's findings on all issues be affirmed.

STANDARD OF REVIEW
¶ 8. The standard of review employed by this Court in domestic relations cases is abundantly clear. Chancellors are vested with broad discretion, and this Court will not disturb the chancellor's findings unless the court was manifestly wrong, the court abused its discretion, or the court applied an erroneous legal standard. Andrews v. Williams, 723 So.2d 1175, 1177(¶ 7) (Miss.Ct.App.1998) (citing Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss.1997); Johnson v. Johnson, 650 So.2d 1281, 1285 (Miss.1994); Crow v. Crow, 622 So.2d 1226, 1228 (Miss.1993); Gregg v. Montgomery, 587 So.2d 928, 931 (Miss.1991)). However, we will not hesitate to reverse should we find that a chancery court was manifestly wrong, abused its discretion, or applied an erroneous legal standard. Glass v. Glass, 726 So.2d 1281, 1284(¶ 11) (Miss.Ct.App.1998) (citing Bowers Window & Door Co., Inc. v. Dearman, 549 So.2d 1309 (Miss.1989)).

ANALYSIS

I. DID THE TRIAL COURT ERR WHEN IT PERMITTED THOMAS SMITH TO USE PAROL EVIDENCE TO IMPEACH THE PLAIN WRITTEN TERMS OF THE JUDGMENT OF THE SUPERIOR COURT OF CALIFORNIA?
¶ 9. Mary Jane asserts that the trial court erred in allowing Thomas Smith to produce evidence which showed that he had paid a joint tax liability in the amount of $30,000, and argue that his payment of that liability fulfilled a debt of $15,000 which Mary Jane claimed he owed. According to Mary Jane, the June 1998 *78 agreement stated that Thomas would pay Mary Jane $15,000 to equalize the cash value of two life insurance policies which were split between the two parties.
¶ 10. Thomas argues that the trial court did not err in allowing Thomas to testify regarding the payment of the tax liability because the agreement entered on June 11, 1998, by the California court was simply re-adopting the provision previously required by the stipulation pendente lite entered on June 30, 1997. The stipulation pendente lite related directly to the payment of the taxes and required that "the petitioner shall be entitled to a credit for those amounts used for payment of the taxes to the extent the taxes are found to be a community liability." Thomas testified that an agreement was entered into in December 1997, six months after the stipulation pendente lite, in which the payment for the tax liability would serve to offset the equalization payment of the life insurance policies.
¶ 11. Under the parol evidence rule, where a contract is not ambiguous, the intention of the contracting parties should be taken solely from the wording of the contract. Turner v. Terry, 799 So.2d 25, 32(¶ 16) (Miss.2001). Although parol evidence which contradicts, varies, alters, adds to, or detracts from the written agreement is not admissible, this bedrock rule "is subject to many exceptions and is said to be very flexible." Byrd v. Rees, 251 Miss. 876, 882, 171 So.2d 864, 867 (1965). "Parol evidence of the intention of the parties may be received to clear up an ambiguity by reason of which, such intention is not definitely expressed." Id.
¶ 12. The final divorce decree of 1998 did state that Thomas owed Mary Jane $15,000 in order to offset the differences in two life insurance policies. The decree also stated that Thomas would pay the $31,000 tax liability from 1996 which was owed jointly and Mary Jane would shift from her half share of an IRA $15,500 in order to offset the obligation. The decree made specific reference to the 1997 stipulation pendente lite. No evidence was presented at trial regarding whether Mary Jane shifted the funds in her IRA, though she has attempted to attach evidence of such to her brief.
¶ 13. The chancellor recognized the divorce as being effected when the marital status was terminated in April 1997. The chancellor also gave great weight to the stipulation pendente lite which the 1998 decree referenced and which was entered in June 1997. Under the chancellor's view, the testimony of a December agreement by Thomas was not parole evidence, since it did not occur prior or contemporaneous to the June 1997 stipulation.
¶ 14. The chancellor's view was in error. The parties entered into the 1998 written agreement which clearly and unambiguously laid out the payment of the taxes by Thomas and the repayment from an IRA by Mary Jane. It also discussed the equalization of two life insurance policies which would require Thomas to pay Mary Jane $15,000. The chancery court allowed Thomas to testify to an oral agreement which allegedly occurred in December 1997, more than six months before the June 1998 final decree was entered. The intention of the parties should have been taken from the wording of the contract. Turner, 799 So.2d at 32(¶ 16). Thomas' testimony was inadmissible.
¶ 15. "The rule that the terms of a written contract or conveyance cannot be varied or added to by parol evidence is not merely a rule of evidence, but is one of substantive law, and, in measuring the rights of the parties to a written contract or conveyance which, on its face, is unambiguous and expresses an agreement complete *79 in all its essential terms, the writing will control." Kelso v. McGowan, 604 So.2d 726, 730 (Miss.1992) (quoting Edrington v. Stephens, 148 Miss. 583, 584-114 So. 387, 389 (1927)). As to matters of law, our standard of review is de novo. Davidson v. Davidson, 667 So.2d 616, 621 (Miss. 1995). Thomas' sole defense to Mary Jane's counter-claim was that he did not owe Mary Jane the $15,000 because they had an oral agreement that he would pay a tax liability that they owed jointly in order to offset that amount. This purported oral agreement was prior to the clear, unambiguous language of the June 1998 written agreement which stated otherwise. We therefore reverse and render judgment for the appellant for the full $15,000.

II. DID THE TRIAL COURT ERR WHEN IT PERMITTED THOMAS SMITH TO TESTIFY THAT HE HAD PAID MONEY HE OWED HIS WIFE WHEN HE FAILED TO PLEAD THE AFFIRMATIVE DEFENSES OF PAYMENT OR ACCORD AND SATISFACTION AS REQUIRED BY THE MISSISSIPPI RULES OF CIVIL PROCEDURE?

III. DID THE TRIAL COURT ABUSE ITS DISCRETION WHEN IT REFUSED TO ALLOW MARY JANE SMITH TO INTRODUCE ADDITIONAL EVIDENCE AND TESTIMONY THAT SHE HAD IN FACT PAID HER SHARE OF THE INCOME TAX LIABILITY AS ORDERED IN THE DIVORCE DECREE, AS THAT WOULD DIRECTLY DISPROVE THOMAS SMITH'S TESTIMONY THAT THEY HAD A VERBAL AGREEMENT PRIOR TO THE DIVORCE DECREE THAT WAS NOT INCORPORATED INTO THE DIVORCE DECREE; THEREFORE, SHE COULD NOT HAVE OWED HIM ANY MONEY THAT WOULD IN ANYWAY HAVE OFFSET THE MONEY HE PLAINLY OWED HER AND HAD NOT PAID HER UNDER THE CALIFORNIA DECREE?
¶ 16. Due to our disposition of Issue I above, we need not reach the remaining issues.
¶ 17. THE JUDGMENT OF THE CHANCERY COURT OF LEE COUNTY IS AFFIRMED IN REGARD TO THE MODIFICATION OF SUPPORT AND REIMBURSEMENT OF $167.43, AND REVERSED AND RENDERED IN REGARD TO THE DENIAL OF THE COUNTER CLAIM FOR $15,000. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.