GRIFFIS, P.J.,
for the Court:
¶ 1. This case seeks to resolve whether the deceased Johnnie Lee Jones’s wife or daughter is entitled to possession of his former home. His will leaves a life estate in the home to his wife. But two other documents — an antenuptial (or prenuptial) agreement and a quitclaim deed — provide evidence of an intention that his daughter should have the house. The wife was awarded possession of the home under the will, as the chancellor found that neither document evincing an intent that the daughter should have the home was legally binding. The daughter now appeals. We find no error and affirm.
FACTS
¶ 2. On March 19, 1997, prior to Johnnie’s marriage to Annie Ruth Jones, the couple signed an antenuptial agreement. The agreement expressed an intention that Johnnie’s daughter from a prior relationship, Bonnie Jones Dixon, was to receive his home upon his death. The antenuptial agreement states “that the house owned by JOHNNIE LEE JONES, 171 Vine Street, is to go to his daughter, BONNIE JONES DIXON ... upon his death, even if he is married to ANNIE RUTH BROWN at that time.” It similarly provided that Annie’s property owned prior to the marriage was not joint property and could be left to the devisee of her choice. The couple married in June 1997.
¶ 3. On September 16, 1998, while married to Annie, Johnnie executed a will leaving Annie a life estate in the Vine Street home:
I own a house where I presently reside at 171 Vine Street, Jackson, Mississippi, which is in my name alone, and I leave this to my wife, ANNIE RUTH JONES, to live in until her death. The house then goes to my sister, ELIZA MAE WEBSTER, of Chicago, Illinois.
The will also revoked “any and all previous wills and/or testaments.” Johnnie and Annie lived together in the home following their marriage, and, beginning in 2001, claimed the home as their homestead.
¶ 4. Then, on December 14, 2005, Johnnie signed a quitclaim deed conveying the Vine Street home to himself and Bonnie, in fee simple and as joint tenants with rights of survivorship. The quitclaim deed was not signed by Annie, although the two were still married at the time. The quitclaim deed states:
For and in consideration of the sum of Ten Dollars ($10.00) cash in hand paid and other good an valuable considerations, the receipt and sufficiency of which is hereby acknowledged, the undersigned JOHNNIE LEE JONES, GRANTOR, does hereby sell, convey and quitclaim unto JOHNNIE LEE JONES and BONNIE MICHELLE DIXON, GRANTEES, as joint tenants with rights of survivorship and not as tenants in common, fee simple title in and to the ... real property located and situated in Hinds County, Mississippi,] ... together with all improvements situated thereon and all appurtenances thereunto belonging.
¶ 5. Johnnie died on January 22, 2011. On November 29, 2011, Annie moved to probate the will in the Hinds County Chancery Court. During this time, Annie continued to live in the Vine Street home. The following month, on December 28, 2011, Bonnie filed a motion for a declaratory judgment within the estate matter, seeking to establish herself as the rightful *208 owner of the Vine Street home. Bonnie also sought damages “in excess of $7,000.00” against Annie, arguing that she had “committed intentional acts of destruction and defacement of the subject property” while living there. In support of her argument that she was the home’s rightful owner, Bonnie presented the antenuptial agreement and the quitclaim deed.
¶ 6. On January 17, 2012, before ruling on Bonnie’s motion, the chancellor admitted the will to probate. Eleven months later, on November 29, 2012, the chancellor denied the declaratory-judgment motion. The chancellor found that neither the antenuptial-agreement provision nor the quitclaim deed was legally enforceable, leaving Bonnie with no claim of ownership to the home. First, the chancellor found the 1997 antenuptial-agreement provision cited by Bonnie was a prior testament that was expressly revoked by Johnnie’s 1998 will. And second, the quitclaim deed was statutorily void because it did not bear both Johnnie’s and Annie’s signatures. Bonnie appeals.
STANDARD OF REVIEW
¶ 7. “This Court employs a de novo standard of review when reviewing questions of law, including motions for [a] declaratory judgment.” Tunica Cnty. v. Hampton Co. Nat’l Sur., 27 So.3d 1128, 1131 (¶ 8) (Miss.2009). A chancellor’s findings of fact will not be disturbed unless the chancellor applied the wrong legal standard, or the findings are manifestly wrong or clearly erroneous. Madden v. Rhodes, 626 So.2d 608, 616 (Miss.1993).
ANALYSIS
¶ 8. Bonnie argues that the provisions in the antenuptial agreement and quitclaim deed trumped her father’s will, giving her, not Annie, the superior right to possess the home left upon his death.

1. Antenuptial Agreement

¶ 9. Johnnie and Annie’s antenuptial agreement conflicts with Johnnie’s later-executed will, in that the former expresses his intent to leave the home to Bonnie, and the latter expresses his intent to leave a life estate in the home to Annie. The chancellor found the antenuptial provision leaving the home to Bonnie was a testamentary provision within the antenuptial contract. And, because the will revoked all previous testaments, the provision was accordingly revoked by will. Bonnie argues that the chancellor is incorrect for two reasons.

a. Whether the antenuptial-agreement provision was a testament revocable by the will.

¶ 10. First, Bonnie argues that the will’s revocation of all previous “testaments” only referred to personal property; thus, the antenuptial provision referencing real property was not revoked. The will does not state that the word “testament” only referred to personal property, and Bonnie cites no case law for this proposition. Rather, Bonnie cites a Wikipedia article and a dictionary definition outlining the historical use of the word “testament” to only include personal property.[1] “Tes *209 tament” has traditionally been defined as “a will disposing of personal property.” Black’s Law Dictionary 1612 (9th ed.2009).
¶ 11. Despite its historical use, however, we cannot find that in modern usage the word “testament” is limited to personal property. The testator’s intent should control, not semantics. The interchangeable nature of the words “devise” — traditionally referring to real property — and “bequeath” — traditionally referring to personal property — has been discussed as follows:
While recognition is given to the traditional meaning of the term “devise,” as denominating a testamentary gift of real estate, it has been held that the words “devise and bequeath,” in their ordinary legal meaning as well as in common usage, refer to real as well as personal property. Although the term “devise” is properly restricted to real property and is not applicable to testamentary dispositions of personal property, which are properly called “bequests” or “legacies,” this distinction will not be allowed in law to defeat the purpose of a testator, and all these terms may be construed interchangeably or applied indifferently to either real or personal property if the context shows that such was the intention of the testator.
80 Am.Jur.2d Wills § 1287 (2013) (citations omitted).
¶ 12. “The surest guide to testamentary intent is the wording employed by the maker of the will. Indeed, the intention of the testator is to be found, not in what he intended to say but what he did say.” In re Estate of Anderson, 541 So.2d 423, 428 (Miss.1989). The will unambiguously states that Annie is to inherit a life estate in the Vine Street home. The will further revokes all prior wills and testaments. By statute, a devise may be revoked by the testator’s subsequent will. Miss.Code Ann. § 91-5-3 (Rev.2013). We find the antenuptial-agreement provision leaving Bonnie the home was a devise, or testament, that Johnnie intended to revoke by the subsequent will.
¶ 13. Since the antenuptial-agreement provision was revoked by the will, the provision is void and gives Bonnie no claim of ownership to the home.

b. Whether Annie contractually renounced all rights to Johnnie’s home.

¶ 14. Bonnie next argues that Annie gave up any right to ownership of the Vine Street home by signing the antenup-tial-agreement provision that Bonnie would receive the home upon Johnnie’s death. Bonnie asserts that, regardless of Johnnie’s intent to will a life estate in the home to Annie, he was precluded from doing so because Annie had contractually renounced any right to future ownership of the home through this provision.[2]
 ¶ 15. An antenuptial agreement is an enforceable contract. Mabus v. Mabus, 890 So.2d 806, 818 (¶ 53) (Miss.2003). As such, it is subject to modification in the same manner as any other contract. Kelso v. McGowan, 604 So.2d 726, 731 (Miss.1992). “Any contract, however made or evidenced, can be discharged or modified by subsequent agreement of the parties .... The existence and the terms of *210 this modifying or discharging agreement can be proved by the same kinds of evidence that are admissible to prove any other kind of contract.” Id. (citation omitted).
¶ 16. Johnnie’s will modified the terms of the antenuptial agreement. The will left the home to Annie instead of Bonnie, directly contradicting the antenup-tial agreement. Because the two documents conflicted, the antenuptial-agreement provision was no longer enforceable once Johnnie’s will came into effect. Thus, even if Annie had contractually absolved herself of any right to the home at the time she signed the antenuptial agreement, this was no longer the case once the will became binding. The antenuptial-agreement provision was voided by the will, and the will’s gift of the home to Annie controlled.

2. Quitclaim, Deed

¶ 17. Bonnie argues that even absent the antenuptial-agreement provision, she is entitled to the home under the quitclaim deed. The quitclaim deed conveyed the property from Johnnie to Johnnie and Bonnie, in fee simple title with rights of survivorship. Bonnie asserts that this conveyance revoked the will’s provision leaving Annie the home. Bonnie asserts that Johnnie was free to revoke this provision of the will prior to his death, as he had conveyed no present interest in the home to Annie. Bonnie argues her father’s intent to convey the property to her after his death was clear, as the quitclaim deed gave her the right of survivorship.
¶ 18. While it may have been Johnnie’s intent to quitclaim the home to himself and Bonnie, and to Bonnie alone after his death, he did not legally do so. The quitclaim deed was signed solely by Johnnie. This was not sufficient under our law. Mississippi Code Annotated section 89-1-29 (Rev.2011) states: “A conveyance, mortgage, deed of trust or other incumbrance upon a homestead exempted from execution shall not be valid or binding unless signed by the spouse of the owner if the owner is married and living with the spouse or by an attorney in fact for the spouse.” (Emphasis added). In other words, “[n]o spouse may convey homestead property to third parties during the lifetime of the spouse without that spouse joining in the conveyance.” Ward v. Ward, 517 So.2d 571, 573 (Miss.1987). “[S]uch a conveyance is null and void ‘as to both the husband and wife.’ ” Id. (quoting Hughes v. Hahn, 209 Miss. 293, 298, 46 So.2d 587, 589 (1950)). See also Rush v. Rush, 360 So.2d 1240, 1244 (Miss.1978) (“[T]he owner of homestead property may, by will, dispose of it as he or she sees fit, but he or she could not thereby defeat his or her spouse’s right to occupy the same as a homestead under the statute.”).
¶ 19. Bonnie asserts, without citation to any authority, that since Johnnie alone signed the homestead-exemption applications, his wife, Annie, had no homestead rights. The applications, although signed by Johnnie alone, state that they are claiming homestead rights for Johnnie and Annie. We are unwilling to read the statute to require that both spouses sign a homestead application in order for it to be effective.
¶20. Bonnie also asserts that a binding contract, executed before homestead rights arise, runs with the land and trumps a subsequently acquired homestead right. Bonnie relies upon Minor v. Interstate Gravel Co., 130 Miss. 553, 94 So.3 (1922), and Smith v. Smith, 193 Miss. 201, 8 So.2d 461 (1942). Neither applies to this case. Minor held that an option to purchase land, given before the grantor married, was superior to the subsequently *211 created homestead rights of the spouse. Minor, 130 Miss. at 563-64, 94 So. at 4. Smith held that a contract (deed of trust) created before a marriage was superior to subsequently created homestead rights. Smith, 193 Miss. at 206, 8 So.2d at 462. Neither case controls this situation because both dealt with contracts creating unilaterally irrevocable rights in third parties at the time they were created. In the present case, the antenuptial agreement could be, and was, superseded by Johnnie’s actions in living in the home with Annie and filing for a homestead exemption on the property. This created rights in Annie that were superior to the previously executed antenuptial agreement. While Bonnie had a right to seek enforcement of the antenuptial agreement if Johnnie had died without revoking it, this right expired once Johnnie made his will leaving the home to Annie and lived there with her while claiming it as their homestead.
¶ 21. The record shows that Johnnie applied for a Mississippi homestead exemption on the Vine Street home in 2001, and again in 2005. The 2005 application was made six months prior to the attempt to quitclaim the property. Because the home was exempted as a homestead, and because Annie resided in the home with Johnnie, Annie’s signature was required to convey the property. Annie did not sign the quitclaim deed, nor did she know of its existence.
¶22. Bonnie argues Annie’s signature was not required because Annie had no right to claim the home as her homestead. Bonnie reasons that when Annie signed the antenuptial agreement stating that Bonnie would receive the home upon Johnnie’s death, Annie waived all rights in the home, including the right to claim it as a homestead. However, the statutory signature requirement cannot be waived. Ward, 517 So.2d at 573. The supreme court in Ward explained:
Our legislature has chosen to place a restriction on the transfer or encumbrance of homesteads[,] and therefore, homesteads in Mississippi may not be alienated except in compliance with those restrictions. There can be no operative conveyance or effectual release of the exemption unless the method pointed out by the statute is pursued with strictness[,] and no requirement of the statute may be waived by the husband and wife or by either of them. Chancery will not interfere to give relief where by express law there is a limitation on the power of alienation of the homestead[,] and the final relief sought is merely to relieve that limitation.
Id. (emphasis added).
¶23. By statute, the quitclaim deed attempting to convey the home without Annie’s signature was invalid. The issues on appeal are without merit, and the chancellor’s judgment is affirmed.
¶ 24. THE JUDGMENT OF THE HINDS COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ„ CONCUR. CARLTON, J., CONCURS IN RESULT ONLY.

. See http://www.yourdictionary.com/ testament# law (last visited March 5, 2014) (The legal definition of "testament” is: "A document disposing of a person’s personal property upon his or her death, distinct from a will, which is a devise of real estate.”). Even the Wikipedia discussion Bonnie cites notes that the terms are used interchangeably, however. See http://en.wikipedia.org/wiki/ Will_and_testament (last visited March 5, 2014) ("Though it has at times been thought that a ‘will’ was historically limited to real property while 'testament' applies only to dispositions of personal property (thus giving rise to the popular title of the document as 'Last Will and Testament’), the historical rec *209 ords show that the terms have been used interchangeably. ”).

. While Bonnie was not a party to the contract, she was a third-party beneficiary. A third-party beneficiary may enforce a contractual provision made for his benefit, despite being a nonsignatory to the contract, as long as his right to maintain an action "springs” from the contract itself. Rein v. Benchmark Constr. Co., 865 So.2d 1134, 1145 (¶ 37) (Miss.2004).